# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CAMERON CORNELL, | No. 51305-6-II |
| Respondent, | |
| v. | |
| MICHAEL C. CODEKAS, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Michael Codekas appeals the trial court's final order and findings on Cameron Cornell's petition to modify a parenting plan and order of child support. He argues that the trial court violated his due process rights, the appearance of fairness doctrine, and the CJC Canon 2.9(C) by improperly considering a deposition transcript that was not admitted into evidence. Codekas argues that without the trial court's reliance on the deposition transcript, its findings of fact, specifically the trial court's domestic violence finding, are not supported by substantial evidence.

Codekas also challenges the trial court's order of child support, arguing that the trial court abused its discretion by imputing his income without finding that he was voluntarily underemployed and by deducting retirement contributions from Cornell's income. Codekas also argues that the trial court improperly awarded fees to Cornell under RCW 26.09.260(13). He asks us to vacate the trial court's final orders and remand for a new trial in front of a different judge. We affirm the trial court's orders, but remand to the trial court to strike three findings of fact and

limited portions of other findings of fact that are not supported by substantial evidence on the record, but have no prejudicial effect on the outcome of the proceedings. We also remand to the trial court to strike Cornell's retirement contribution deduction from her income calculation and recalculate Cornell's income and Codekas's child support obligation. We remand to the same judge, as Codekas has not shown that the trial court violated the appearance of fairness doctrine or CJC Canon 2.9(C).

## FACTS

### I. BACKGROUND

Codekas and Cornell began a relationship in 2006 and had one child together, C.C.,[1] born in 2009. Codekas and Cornell separated when C.C. was two years old. In March 2014, the trial court entered a parenting plan, residential schedule, and child support order. The parenting plan gave each parent 50/50 residential time and provided for joint decision making. At that time, Codekas lived with his mother, Shirley Low. Cornell agreed to the parenting plan because she was confident Low's household had the support to ensure Codekas would be "a good dad." Ex. 19 at 84-85.

In August 2015, Codekas and Cornell disagreed on whether C.C. should attend kindergarten at a public or private school. Both parents unilaterally enrolled C.C. in their preferred schools. In November 2015, Codekas accused Cornell's significant other, S.C.,[2] of molesting C.C.

---

[1] We use the minor's initials to protect their privacy.

[2] We use initials to refer to Cornell's significant other because there is no evidence in the record of a criminal charge or conviction flowing from this accusation.

Codekas alleged that C.C. had disclosed the abuse to Low. At Codekas's direction, Low called the police to report the alleged abuse.

Codekas refused to return C.C. to Cornell. The next day, Cornell filed a petition to modify their parenting plan and child support order. Cornell's petition cites to Codekas's unilateral enrollment of C.C. in his preferred kindergarten and his refusal to return C.C. to Cornell during her agreed time with C.C. as the substantial change in circumstances to justify a modification of their parenting plan.

Child Protective Services (CPS) and the Tacoma Police Department investigated the allegation. C.C. did not disclose the abuse to either agency. Child Protective Services (CPS) determined the molestation allegation was unfounded on December 7, 2015. Codekas filed a complaint against the CPS investigator who interviewed C.C. alleging that the investigator was biased. On December 14, 2015, the Tacoma Police Department determined the molestation allegation was unfounded. The Tacoma Police Department also determined that Codekas's allegation against the CPS investigator was also unfounded.

Codekas hired his own forensic psychologist to interview C.C. During the interview, C.C. purportedly disclosed the abuse that he had described to Low. Following the interview, Codekas filed a petition for a sexual assault protection order against S.C.

On December 18, 2015, Codekas asked Low to help him serve S.C. with the petition and order for protection. Codekas and Low, in separate vehicles, began following S.C.'s vehicle. S.C. was driving his vehicle and Cornell was a passenger. A car chase ensued. Codekas made multiple attempts to drive S.C.'s vehicle over a curb and off the road. Eventually, Low maneuvered her vehicle in front of S.C.'s vehicle and stopped abruptly, causing a collision. Low exited her vehicle

and served S.C. with the petition and order for protection.  Codekas and Low were arrested at the scene of the collision.  Codekas was charged with one count of harassment – threaten malicious acts, one count of reckless endangerment/DV, and one count of reckless endangerment.  Low was charged with four counts of reckless endangerment/DV.

After the car altercation, Cornell filed a restraining order and domestic violence protection order against Codekas.  In February 2016, Codekas proposed to drop his sexual assault protection order against S.C. if Cornell agreed to drop her domestic violence protection order against him.  Cornell agreed, and both petitions were dismissed.

In July 2016, Codekas filed a cross petition for modification of the parenting plan, requesting full custody of C.C.  In his declaration in support of his cross petition, Codekas referred to the sexual assault allegation against S.C.  He claimed Cornell "vehemently stated [C.C.]'s disclosure was untrue," yet she admitted that C.C. does not lie.  Clerk's Papers (CP) at 570.  Codekas also accused Cornell of not investigating C.C.'s allegations of abuse, but instead Cornell sought only to gain full custody of C.C.

The trial court appointed a guardian ad litem (GAL) on behalf of C.C.  The GAL issued a report that discussed Codekas's allegations of sexual abuse against S.C.  The GAL reported that she had "serious concerns" about how Codekas and Low handled the sexual assault allegation.  The GAL found that S.C. "has nothing in his background that is concerning" and that "[C.C.] appears to have a very warm nurturing relationship with [S.C.]."  CP at 33.  The GAL testified at trial, and her report was admitted into evidence.

## II. INCIDENTS OF DOMESTIC VIOLENCE

Cornell disclosed that Codekas committed several acts of domestic violence against Cornell throughout their relationship. In 2009, when Cornell was eight months pregnant with C.C., Codekas locked Cornell out of their shared apartment. Cornell contacted their landlord to open the apartment. Codekas contacted the police to report the landlord when he attempted to let her back into their apartment. Codekas denied any recollection of this event at trial.

In 2010, Codekas was arrested for simple assault (DV) after a confrontation with Cornell. Codekas took Cornell's belongings and pushed Cornell to the ground multiple times. Cornell sustained injuries to her wrist and hand. Although the charges were dropped, the incident report was admitted into evidence without objection.

Cornell testified to the 2010 incident at her discovery deposition. At her deposition, Cornell stated,

> [Cornell]: He was trying to slam the door, and he slammed the door on my fingers, and pushed me back on the ground. There was [sic] multiple pushes. He was swearing at me, and calling me a psycho bitch, and expletives, and telling me that, you know, he was going to take [C.C.] away from me.

Ex. 19 at 83. Codekas requested the publication of Cornell's deposition transcript, but the deposition was not admitted into evidence.

Cornell also testified to a 2012 incident at her deposition. She stated that she was aware of Codekas's sister calling the police in 2012 because his sister "was concerned about how [Codekas] was disciplining [C.C.]." Ex 19 at 119. At trial, Codekas stated that he did not remember this incident.

In November 2015, following Codekas's accusation that S.C. had sexually abused C.C., a Tacoma Police detective interviewed Cornell. During the interview, Cornell disclosed past

domestic violence incidences between herself and Codekas, including when Codekas locked Cornell out of their shared apartment, when Cornell was arrested for pushing Cornell, and when Codekas "'cracked [Cornell's] head' against the glass door in her apartment." CP at 359-60; Ex. 3 at 10. The police report was admitted into evidence without objection.

The trial court ordered the court-appointed GAL to investigate and address any domestic violence by Cornell and Codekas. Her report discusses incidents of Codekas's domestic violence against Cornell, including Codekas's 2010 arrest for simple assault (DV). The GAL report was admitted into evidence without objection.

Additionally, Wendy Hutchins-Cook, a court-appointed psychologist, performed a parenting evaluation. Her report documents interviews with Codekas and Cornell. Hutchins-Cook includes multiple different allegations of Codekas's past abuse against Cornell, including Cornell's statements that Codekas sexually, physically, and emotionally abused Cornell during their relationship. Hutchins-Cook's report quotes Cornell as stating, "'[Codekas] would get emotionally abusive. . . . He was physically abusive, pushing me down once. He forced sex on me when I didn't want it.'" Ex. 3 at 9. Hutchins-Cook's report quotes Codekas as stating, "'This was shortly after I supposedly raped [Cornell], beat [Cornell], and smashed [Cornell's] head.'" Ex. 2 at 3. Hutchins-Cook's report was admitted into evidence without objection.

### III. TRIAL PROCEEDINGS

The case proceeded to trial in October 2017. The day of trial, Codekas dropped his modification petition. Codekas testified that he "changed [his] request" and no longer sought full custody. 2 Verbatim Report of Proceedings (VRP) at 394-95. He asked the trial court to maintain the parties' 50/50 plan. Codekas testified that he had actually changed his position and wanted to

maintain the parties' 50/50 plan in as early as April 2017, however he waited until the day of trial to drop his petition that sought full custody of C.C.

Codekas presented a psychologist, Landon Poppleton, as an expert witness to critique Hutchins-Cook's evaluation. Poppleton testified that he did not have any concerns with the methods or conclusions of Hutchins-Cook's evaluation. Later, when asked if he believed Hutchins-Cook's ultimate recommendations were correct, he testified that he could not say whether "she was right or wrong." 2 VRP at 244.

Cornell and S.C. testified about Codekas's history of emotional abuse against Cornell. Both Cornell and S.C. testified that Codekas would "bully" Cornell and called Cornell a "bitch." 1 VRP at 18-19, 73, 105, 106. Cornell also testified about her income. Cornell testified that she contributed to her 401K in the amount of $272 a month. Cornell's proposed child support order and financial declaration were admitted into evidence.

Following closing arguments, the trial judge invited the parties to note a hearing and make objections after reviewing her letter ruling.

## IV. LETTER RULING

The trial court entered a letter ruling on November 6, 2017, followed by written findings of fact and conclusions of law, granting Cornell's petition for modification.

The trial court made detailed findings of Codekas's history of domestic violence:

> 2. There is a history of domestic violence between the parties. Mother alleged that Father raped, beat, and emotionally abused her while they were together. It was "usual" for Father to tell her that she was crazy and threaten to take [C.C.] away from her. In 2009, police were called because Father locked Mother out of the apartment. In March 2010, Mother called the police because Father had taken away her car keys, driver's license, and cell phone; pushed her to the ground, causing a sprained wrist and injured hand; and shoved her in the stomach with his feet. In 2011, Father "bashed" Mother's head into a door and called her a "psycho

7

bitch." The 2011 incident is what prompted Mother to end the relationship with Father. Although Father denied that he assaulted Mother in 2010, the Court observed his demeanor during testimony and did not find him credible.

3. In 2012, at a time when Father was living with [Low] and sister, Father's sister called the police because she was concerned about the way Father was disciplining [C.C.]. During trial, Father claimed he did not remember this incident. The Court had the opportunity to observe Father's demeanor and did not find him credible.

CP at 720.

The trial court concluded that Codekas has a history of domestic violence against Cornell, as defined by former RCW 26.50.010(1) (2008), that has continued in this case with Codekas "engaging in a low-speed chase" of Cornell. CP at 725. The trial court found that Cornell did not ask for restrictions of Codekas's residential time based on alleged domestic abuse in 2014 because "she felt that there would be enough rules and family support in place to make sure that he would be a good dad." CP at 720.

The trial court also made findings regarding C.C.'s alleged molestation disclosure. The trial court found that following the disclosure, "Father immediately called the police to report the allegations" and "[a]s a result of Father's call to law enforcement," a CPS investigation was launched, and S.C. became a criminal suspect. CP at 721. The trial court further found that "[i]n spite of the fact that the molestation allegations were deemed unfounded . . ., Father continued to maintain that [S.C.] was a danger to [C.C.]." CP at 722. Codekas "cited the allegations as one of the bases for his petition for modification" and "did not concede that the allegations against [S.C.] were unfounded until trial." CP at 722.

The trial court also found that Codekas engaged in an abusive use of conflict and moved to modify the parenting plan in bad faith under RCW 26.09.260(13) and CR 11. The trial court found that Codekas's cross petition for a modification and defense to Cornell's petition were made

in bad faith, not well grounded in fact, and interposed for improper purposes, such as to harass Cornell and to improperly leverage her into dismissing her modification petition. The trial court supported its finding by referencing Codekas dropping his demand for a modification on the day of trial, his lack of credibility, and the testimony of Hutchins-Cook and the GAL, whose investigations contradicted allegations made by Codekas in support of his petition for modification.

The trial court modified the parenting plan to conform to Hutchins-Cook's recommendations, noting that "[b]oth parties have testified that they believe that the current parenting plan is unworkable due to conflict between them." CP at 724. The trial court also found that Codekas's expert witness, Poppleton, "conceded he did not have any problems with Dr. Hutchins-Cook's findings and conclusions." CP at 724. The trial court's letter ruling opened by directing the parties to raise any objections to the content of the ruling at the presentment hearing and concluded by stating, "Again, any objections or changes to these findings and conclusions, as well as arguments relating to fees and costs, can be addressed at a presentment hearing." CP at 706.

## V. PRESENTATION HEARING

The presentation hearing on all final orders was held on November 22, 2017. At the hearing, the trial court again requested the parties raise their "proposed changes" to the court's orders. 4 VRP at 610.

First, the court addressed Codekas's objection to the trial court's "bad faith" finding against Codekas. 4 VRP at 610. The trial court stated that Codekas's cross petition to modify the parenting plan was an abusive use of conflict and that Codekas held the opinion that C.C. was sexually

abused up until the day of trial, which "complicated the litigation." 4 VRP at 614. The trial court found that Codekas's actions "intended to influence the outcome" of the litigation and "considering that all of the investigating agencies had already concluded their work and essentially found the allegations to be without merit," the trial court ordered sanctions pursuant to RCW 26.09.260(13) and CR 11 for bad faith litigation on behalf of Codekas. 4 VRP at 614. The trial court ordered sanctions against Codekas for $5,000.

The trial court also addressed the parties' income calculations for child support purposes. The parties agreed that Codekas's pay stubs indicated his monthly income was $1,600. Codekas's hourly wage as a construction foreman was $25, he attended school part time, and worked "as much as he possibly" could. 4 VRP at 624. From this information, the trial court found that Codekas was voluntarily underemployed and imputed his monthly income to $2,850.

Cornell requested a deduction to her income calculation based on her retirement contributions. Codekas raised an objection to the deduction because Cornell did not provide documentation that she had been making retirement contributions for the year preceding trial, as required by RCW 26.19.071(5)(g). The trial court granted Cornell's request, stating that the court was relying on testimony presented at trial and "there was at least circumstantial evidence presented that it was paid during the last twelve months." 4 VRP at 6227.

The trial court entered all final orders and incorporated its memorandum decision by reference into the final orders. The trial court reduced Codekas's residential time from 50 percent to 35 percent. Based on the trial court's domestic violence findings, the trial court granted Cornell sole decision making. The trial court also found Codekas to be the obligor parent and ordered a transfer payment of $450 a month.

Codekas appeals the parenting plan, order of child support with worksheets, and order on modification.

ANALYSIS

Codekas challenges a number of the trial court's findings of fact. Codekas argues that the trial court's domestic violence finding and other findings of fact are supported only by Cornell's deposition transcript, which neither party moved to admit into evidence. Codekas argues that the trial court's reliance on the deposition transcript violates his due process right to a fair trial, the appearance of fairness doctrine, and CJC Canon 2.9(C). Codekas also challenges the trial court's imputation of his income based on a finding that his income was "unknown." Codekas also argues that the trial court abused its discretion when deducting Cornell's retirement contributions from her income calculation under RCW 26.19.071(5)(g) and when awarding attorney fees to Cornell under RCW 26.09.260(13).

We hold that to the extent the trial court relied on Cornell's deposition transcript, its reliance was improper. However, the trial court's reliance on the deposition transcript does not demonstrate a violation of Codekas's due process right to a fair trial, the appearance of fairness doctrine, or the CJC Canon 2.9(C). Instead, the challenged findings of fact are either supported by other substantial evidence in the record or have no prejudicial effect on the outcome of the proceedings. As to the child support order, we hold that the trial court did not abuse its discretion when finding Codekas's income was "unknown" and imputing his income. We hold that the trial court abused its discretion when deducting Cornell's retirement contributions from her income calculation. Consequently, we affirm the trial court's conclusions of law but remand to the trial court to strike limited portions of certain challenged findings of fact, and we remand the support

order to strike only Cornell's retirement contribution deduction and recalculate Cornell's income. We also affirm the trial court's attorney fees and costs award to Cornell, but decline to award Cornell fees and costs on appeal.

## I. LEGAL PRINCIPLES

We review a trial court's decision to modify a parenting plan for abuse of discretion. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *In re Marriage of Chua*, 149 Wn. App. 147, 153-54, 202 P.3d 367 (2009). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 136 (1997). Parenting plan modifications are rarely reversed on appeal because "'[t]he emotional and financial interests affected by such decisions are best served by finality.'" *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003) (quoting *In re Parentage of Jannot*, 110 Wn. App. 16, 21, 37 P.3d 1265 (2002)).

We review a trial court's findings of fact regarding modification for substantial evidence. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Substantial evidence exists when there is sufficient evidence to persuade a rational fair-minded person that the premise is true. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). The trial court's findings of fact are verities on appeal as long as they are supported by substantial evidence. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Unchallenged conclusions of law

become the law of the case. *In re Marriage of Laidlaw*, 2 Wn. App. 2d 381, 386, 409 P.3d 1184, *review denied*, 190 Wn.2d 1022 (2018).

We do not substitute our judgment for the superior court's judgment, weigh the evidence, or evaluate witness credibility. *Wilson*, 165 Wn. App. at 340. When the superior court has weighed the evidence, we determine only whether substantial evidence supports the findings of fact and if so, whether the findings support the superior court's conclusions of law. *Id.* We review the superior court's conclusions of law de novo. *In re Marriage of Wehr*, 165 Wn. App. 610, 613, 267 P.3d 1045 (2011).

Pursuant to RCW 26.09.260(4), "[t]he court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191." Under former RCW 26.09.191 (2011), a trial court must limit a parent's residential time and may limit a parent's decision making if that parent has a history of acts of domestic violence. Domestic violence includes any "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault" between household members. Former RCW 26.050.010(1)(a).

## II. TRIAL COURT'S USE OF THE DEPOSITION TRANSCRIPT

Codekas challenges a number of the trial court's findings of fact, contending that the trial court improperly relied on Cornell's deposition transcript, which neither party moved to admit into

evidence.[3]  Codekas argues that the trial court's use of the deposition transcript as substantive evidence violates his due process right to a fair trial, the appearance of fairness doctrine, and the CJC Cannon 2.9(C).

## A.  DUE PROCESS AND JUDICIAL BIAS

Codekas argues that his constitutional right to a fair trial was infringed by the trial court's reliance on Cornell's deposition transcript in her findings of fact, which was information outside of the trial court record.  As a result of the trial court's error, Codekas argues that the judge's "'impartiality may be reasonably questioned.'"  Opening Br. of Appellant at 24 (quoting *State v. Ra*, 144 Wn. App. 688, 704-05, 175 P.3d 609 (2008)).  Codekas also claims that the trial judge violated the CJC by performing her own investigation, considering evidence not presented at trial, and advocating for Cornell.  We disagree.

At trial, Codekas requested the publication of Cornell's deposition transcript for the purpose of impeaching Cornell's credibility.  CR 32(a)(1).  Codekas did not seek to admit the deposition transcript into evidence.  Impeachment evidence may be considered to determine witness credibility and may not be used as substantive evidence.  *State v. Garland*, 169 Wn. App. 869, 885, 282 P.3d 1137 (2012); ER 613(b).

---

[3] Codekas also argues that the trial court erred when it made the domestic violence finding against him because Cornell did not allege domestic violence in her modification petition and she did not argue for a domestic violence finding at trial.  However, Codekas does not provide us with any argument or citations to legal authority to support his assertion that the trial court cannot make a domestic violence finding sua sponte.  RAP 10.3(a)(6).  "Such '[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'"  *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (alteration in original) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)); *see* RAP 10.3(a)(6).  Accordingly, we do not address his argument.

However, Codekas raises this error for the first time on appeal. Under RAP 2.5(a), we generally do not entertain issues not raised in the trial court. The purpose of this rule is to "'encourage the efficient use of judicial resources . . . by ensuring that the trial court has an opportunity to correct any errors, thereby avoiding unnecessary appeals.'" *State v. Fenwick*, 164 Wn. App. 392, 398, 264 P.3d 284 (2011) (alteration in original) (internal quotation marks omitted) (quoting *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011)). An exception to this general rule is a "'manifest error affecting a constitutional right.'" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)).

Following closing arguments, the trial judge invited the parties to note a hearing and make objections after reviewing her letter ruling. The trial judge opened her letter ruling by directing the parties to make objections to the content of her letter at a presentment hearing and concluded her letter by stating, "Again, any objections or changes to these findings and conclusions, as well as arguments relating to fees and costs, can be addressed at a presentment hearing." CP at 706. At the presentment hearing, Codekas did not raise any objection to the trial court's "history of domestic violence" findings or any other findings of fact. CP at 701.

Codekas had ample opportunity to raise his objections to the trial court's findings below and failed to do so. Further, Codekas does not demonstrate how the trial court's reliance on the deposition transcript that Codekas himself offered to publish at trial impacts the judge's neutrality against Codekas. Moreover, Codekas does not demonstrate that the error was "manifest" or that the error resulted in "'practical or identifiable consequence[s].'" *O'Hara*, 167 Wn.2d at 99 (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). Codekas claims that the trial court's findings and ultimate decision *rely only* on the deposition transcript. However, as we

discuss below, the findings of fact that Codekas challenges are either supported by other substantial evidence in the record or have no prejudicial effect on the outcome of the proceedings.

B. CHALLENGED FINDINGS OF FACT

In determining whether substantial evidence exists to support the trial court's finding of fact, we review the record in the light most favorable to the party in whose favor the findings were entered, here Cornell. *Zigler*, 154 Wn. App. at 812.

1.     *Finding of Fact 2*

Codekas challenges finding of fact 2, which supports the trial court's conclusion that Codekas has a history of domestic violence as defined by former RCW 26.050.010(1). Finding of fact 2 relays Codekas's history of domestic violence against Cornell, including Codekas's alleged physical, sexual, and emotional abuse against Cornell.

Codekas argues that the findings were not supported by substantial evidence because the findings rely on Cornell's deposition, which was not admitted into evidence at trial. To the extent that the trial court relied on Cornell's deposition testimony, its reliance was improper but does not invalidate finding of fact 2. However, substantial evidence in the record supports the trial court's history of domestic violence finding.

First, the trial court's finding that Cornell alleged that Codekas "raped, beat, and emotionally abused her" was supported in both Hutchins-Cook's report and the GAL report. CP at 720. Hutchins-Cook's report quotes Cornell as stating, "'[Codekas] would get emotionally abusive. . . . He was physically abusive, pushing me down once. He forced sex on me when I didn't want it.'" Ex. 3 at 9. Hutchins-Cook's report and the GAL report were admitted as evidence at trial.

The 2009 incident where "police were called because Father locked Mother out of the apartment" is supported by substantial evidence. CP at 701. The incident report following the molestation allegation against S.C. states that Cornell "explained one time [Codekas] locked her out of the apartment while she was pregnant and the apartment manager had to let her back in and the police were called." CP at 359. The incident report was admitted into evidence.

Codekas's 2010 arrest for simple assault (DV), when he reportedly took Cornell's "car keys, driver's license, and cell phone; pushed her to the ground, causing a sprained wrist and injured hand; and shoved her in the stomach with his feet" is supported by ample evidence. CP at 720. The full incident report of the assault was admitted into evidence. The GAL report references Codekas's 2010 arrest for simple assault (DV) as an incident of Codekas's domestic violence against Cornell. Additionally, the incident report following the molestation allegation against S.C. cites to Codekas's arrest for pushing Cornell. All reports were admitted into evidence.

The 2011 incident where Codekas reportedly "bashed" Cornell's head into a door is similarly supported by substantial evidence. CP at 720. The incident report following the molestation allegation references the 2009 abuse incident where Codekas "'cracked [Cornell's] head against the glass door in her apartment." CP at 359-60; Ex. 3 at 10. Similarly, Hutchins-Cook's report quotes Codekas as stating, "'This was shortly after I supposedly raped [Cornell], beat [Cornell], and smashed [Cornell's] head.'" Ex. 2 at 3. Again, the incident report and Hutchins-Cook's report were admitted into evidence at trial.

Last, Codekas argues that the trial court's finding that he called Cornell a "'psycho bitch'" is supported by only Cornell's deposition transcript, which was not admitted into evidence. CP at 720. Although ample evidence in the record supports a finding that Codekas engaged in name

17

calling, including calling Cornell a "bitch," the record does not support a finding that Codekas called Cornell a "'psycho bitch.'" CP at 720. Therefore, we remand to excise the word "psycho" from finding of fact 2, but hold that substantial evidence supports what remains of the finding as well as the trial court's conclusion that Codekas has a history of domestic violence, as defined by former RCW 26.050.010(1).

2. *Finding of Fact 3*

Codekas challenges the trial court's finding of fact 3 that states Codekas's sister called the police in 2012 "because she was concerned about the way [Codekas] was disciplining [C.C.]." CP at 720. The trial court noted that during trial, Codekas "claimed he did not remember this incident. The Court had the opportunity to observe Father's demeanor and did not find him credible." CP at 720.

Cornell questioned Codekas about the 2012 police report, but Codekas stated that he did not remember the incident. The only other statements regarding this incident were contained in Cornell's deposition transcript. Therefore, we remand to the trial court to strike finding of fact 3 because it is not supported by substantial evidence. We note that striking finding of fact 3 has no prejudicial effect on the outcome of the proceedings, as other substantial evidence in the record forms the strong basis for the trial court's domestic violence finding against Codekas.

3. *Finding of Fact 4*

Codekas challenges the trial court's finding that in 2014, Cornell "did not ask for any restrictions on [Codekas's] residential time based on alleged domestic violence because she felt that there would be enough rules and family support in place to make sure that he would be a good dad." CP at 701.

At trial, Cornell did not testify about her reasoning for not seeking restrictions on Codekas's residential time when the parties entered the first parenting plan and child support order in 2014. The only statements Cornell made regarding her reasoning for not seeking restrictions were at her deposition. Therefore, the trial testimony does not support finding of fact 4.

4.     *Findings of Fact 11 and 13*

Codekas challenges the trial court's statement that Codekas called the police following C.C.'s alleged molestation disclosure. ("Father immediately called the police. . . . As a result of Father's call to law enforcement, a CPS investigation was launched."). CP at 702. Codekas's sexual assault protection order states that Codekas "told [Low] to call the police." Ex. 25 at 4. The trial testimony supports the fact that Codekas himself did not call the police. Rather, Codekas instructed Low to call the police following C.C.'s alleged disclosure. We affirm the findings but on remand instruct the trial court to strike the statement that "Father" called law enforcement and revise findings of fact 11 and 13 to reflect that Low called law enforcement.

5.     *Finding of Fact 18*

Codekas challenges the trial court's finding that "[i]n spite of the fact that the molestation allegations were deemed unfounded in February 2016, [Codekas] continued to maintain that [S.C.] was a danger to [C.C.]." CP at 703. "[Codekas] cited the allegations as one of the bases for his petition for modification, filed in July 2016." CP at 703.

Codekas's declaration in support of his cross petition included the following in support of adequate cause:

> When [C.C.] made a disclosure of sexual abuse by [S.C] to my mom, [Cornell's] first move was to file a petition to modify the parenting plan, seeking to drastically reduce my time . . . without ever hearing what [C.C.] disclosed or seeing the results of a forensic interview. [Cornell] has vehemently stated [C.C.]'s disclosure was

and is untrue, yet, she admitted . . . that [C.C.] "doesn't normally just say things that aren't true." . . . It is extremely concerning that she did not even investigate the allegations, but chose to attempt to gain full custody, thus ensuring that [C.C.] would be living full time in the same household as his potential abuser.

CP at 569-70.

We do not substitute our judgment for that of the trial court and defer to the trial court's determinations on the persuasiveness of the evidence. *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). We defer to the trial court's interpretation of Codekas's declaration. The declaration supports the trial court's finding.

6. *Finding of Fact 19*

Codekas also challenges the trial court's finding that Codekas "did not concede that the allegations against [S.C.] were unfounded until trial." CP at 703. Codekas argues that "the record is undisputed that he accepted the CPS report that the allegations were unfounded and thereafter dismissed the sexual assault petition against [S.C.]." Opening Br. of Appellant at 26.

The record does not support Codekas's contention. On December 7, 2015, the CPS report came back unfounded. After the report came back unfounded, Codekas filed a complaint against the CPS investigator, alleging that the investigator was biased against him. On December 14, 2015, the Tacoma Police Department also determined that the molestation allegation was unfounded.

However, Codekas and Low served S.C. with the sexual assault protection order on December 17, 2015, after CPS and the Tacoma Police Department had determined that the allegations were unfounded. Furthermore, the court heard testimony on multiple occasions that Codekas dismissed his sexual assault petition against S.C. only after Cornell agreed to dismiss her

20

domestic violence protection order against Codekas, not because Codekas believed that the allegations were unfounded.

We hold that substantial evidence supports this finding.

7.  *Finding of Fact 31*

Codekas challenges the trial court's finding that Dr. Poppleton "conceded that he did not have any problems with Hutchins-Cook's findings and conclusions." CP at 705. Codekas argues that this finding is not supported by substantial evidence because Dr. Poppleton was critical of Hutchins-Cook's analysis. We disagree. Although the record supports a finding that Poppleton was critical of Hutchins-Cook's *analysis*, Poppleton did not testify that he had any issues in regards to Hutchins-Cook's *findings and conclusion*.

8.  *Finding of Fact 32*

Codekas challenges the trial court's finding that "[b]oth parties have testified that they believe that the current parenting plan is unworkable due to conflict between them" because Codekas testified at trial that he sought to maintain the current 50/50 plan. CP at 705. Codekas is correct that the trial testimony does not support finding of fact 32. Although Codekas previously argued for a modification because "the conflict has grown between us to the point that the existing 50/50 plan is no longer in [C.C.]'s best interest," Codekas changed his position the day of trial by dropping his modification petition. CP at 569. At trial, Codekas "changed [his] request" and asked the trial court to maintain the parties' 50/50 plan. RP at 395.

Challenged findings are verities on appeal if supported by substantial evidence. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). We affirm the trial court's finding of fact 2 due to extensive evidence in the record that supports the trial court's conclusion that Codekas

has a history of domestic violence as defined by former RCW 26.050.010(1). However, we remand to strike the word "psycho" from finding of fact 2. We affirm the trial court's findings of fact 11 and 13, which state that the police were called following C.C.'s alleged molestation disclosure, but remand to strike the phrase "Father called," as substantial evidence supports a finding that Low, not Codekas, called the police. We affirm the trial court's interpretation of Codekas's petition for modification in finding of fact 18, as well as the trial court's finding that Codekas did not concede that the allegations were unfounded until trial in finding of fact 19. Last, we affirm the trial court's finding of fact 31, which states that Dr. Poppleton did not have any problems with Hutchins-Cook's findings and conclusions.

We remand to strike finding of fact 3, which relays an incident in 2012 where Codekas's sister allegedly called the police due to concerns regarding Codekas's discipline of C.C., and finding of fact 4, which explains Cornell's reasoning for not seeking restrictions on Codekas when entering the first parenting plan and child support order. We also remand to strike the finding that both parties testified as to their belief that the parenting plan was unworkable, supporting finding of fact 32. Although not supported by substantial evidence on the record, we hold that findings of fact 3, 4, and 32, and the limited portions of findings of fact 2, 11, 13, 18, and 31 that we remand to strike do not have a prejudicial effect on the outcome of the proceedings. Therefore, we affirm the trial court's final orders.

## IV. CHILD SUPPORT

Codekas argues that the trial court abused its discretion by improperly finding his income was unknown and imputing his income. He also argues that the trial court abused its discretion when deducting Cornell's retirement contributions. Cornell argues that the trial court properly

imputed Codekas's income when it found that his income was unknown because Codekas failed to provide the trial court with any testimony, financial declaration, or tax returns for the trial court to determine Codekas's actual income. Cornell further contends that the trial court properly deducted her retirement contributions from her income calculation. We hold that the trial court did not abuse its discretion when imputing Codekas's income, but abused its discretion when deducting Cornell's retirement contributions from her income calculations. We remand to strike Cornell's retirement contributions and recalculate Cornell's income calculation and the transfer payment amount accordingly.

A.    INCOME IMPUTATION

Codekas argues that the trial court abused its discretion by improperly imputing his income to $2,850 because "his income was established by nearly ten months of paystubs" and the court did not make a finding that Codekas is voluntarily underemployed as required by RCW 26.19.071(6). Opening Br. of Appellant at 27.

RCW 26.19.071(6) discusses when and how income should be imputed to a parent, in part, as follows:

> The court *shall* impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court *shall* determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation. . . . *In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority*:
>     *(a)  Full-time earnings at the current rate of pay.*

(Emphasis added.)

Where income is unknown because of voluntary underemployment or voluntary unemployment, a parent's income shall be based on the parent's full-time earnings at the current rate of pay. RCW 26.19.071(6)(a).

Turning to the present case, Codekas argues that the trial court abused its discretion when imputing his income because his pay stubs show he is "'gainfully employed on a full-time basis'" and the trial court did not make a finding that he is underemployed for the purpose of reducing child support as required by RCW 26.19.071(6). Opening Br. of Appellant at 28 (quoting *In re Marriage of Peterson*, 80 Wn. App. 148, 153, 906 P.2d 1009 (1995)). Codekas provided the trial court with 10 pay stubs, which indicated that his hourly wage as a construction foreman was $25 and he averaged a monthly income of about $1,600. Simple division shows that Codekas averaged about 16 hours of work per week.

The trial court did not abuse its discretion by finding that an average of 16 hours of employment per week is not full-time employment. Because Codekas's pay stubs proved that he is not "'gainfully employed on a full time basis,'" the trial court was not required under RCW 26.19.071(6) to make a finding of whether Codekas was underemployed for the purpose of reducing child support. Opening Br. of Appellant at 28 (quoting *Peterson*, 80 Wn. App. at 153).

The trial court also did not abuse its discretion when finding that Codekas's income was unknown. Codekas did not provide the trial court with a complete understanding of his gross or net income, personal expenses, assets, and debts, or his tax returns as require by RCW

26.19.071(2).[4] "In the absence of records of a parent's actual earnings, the court shall impute a parent's income." RCW 26.19.071(6). The order of child support reveals this lack of information, therefore the trial court correctly concluded that Codekas's income was "unknown." RCW 26.19.071(6).

We hold that the trial court did not abuse its discretion when it found that Codekas's income was "unknown" and when it imputed his income based on his full-time earnings at his current rate of pay, as required by RCW 26.19.071(6).

B.     RETIREMENT CONTRIBUTIONS

Codekas also argues that the trial court abused its discretion by improperly deducting Cornell's retirement contributions from her income calculation under RCW 26.19.071(5)(g) because Cornell did not produce evidence that she had been contributing to her retirement fund during the one-year period preceding trial. Codekas requests us to vacate the child support order and remand.

At trial, Cornell testified that she contributes to her 401K in the amount of $272.[5] Codekas did not question Cornell about her financial declaration or proposed child support order. The trial

---

[4] "Tax returns for the preceding two years and current paystubs shall be provided to verify income and deductions. Other sufficient verification shall be required for income and deductions which do not appear on tax returns or paystubs." RCW 26.19.071(2)

[5] Contrary to Cornell's argument at the hearing for the presentation of final orders, Cornell did not testify at trial and her financial declaration does not state that she "routinely" contributes to her 401K or "historically" has contributed to her 401K.

court granted Cornell's request for a deduction at a posttrial hearing.[6] The trial court found that Cornell's income calculation, including a reduction for her retirement contributions, was by the evidence presented at trial and "there was at least circumstantial evidence presented that it was paid during the last twelve months." 4 VRP at 626-27.

RCW 26.19.071 provides the standards for determining income for purposes of calculating child support obligations. RCW 26.19.071(5)(g) specifically deals with deductions and provides in relevant part,

> The following expenses shall be disclosed and deducted from gross monthly income to calculate net monthly income:
>     (g) Up to five thousand dollars per year in voluntary retirement contributions actually made *if the contributions show a pattern of contributions during the one-year period preceding the action* establishing the child support order.

(Emphasis added.)

As the moving party, Cornell bears the burden of showing that she had been contributing to her retirement fund during the one-year period preceding the action. RCW 26.19.071(5)(g); *In re Marriage of McCausland*, 159 Wn.2d 607, 615, 152 P.3d 1031 (2007). Cornell's financial declaration provided only the monthly amount that Cornell contributes to her 401K, and she did not provide any documentation or testimony at trial that she contributed to her 401K during the one-year period preceding trial. RCW 26.19.071(5)(g).

---

[6] Cornell argues that Codekas waived his opportunity to examine Cornell's financial information when he failed to engage in discovery on the child support issue or cross-examine Cornell at trial. However, the trial court did not address the child support issue until the hearing for the presentation of final orders.

The trial court abused its discretion by deducting Cornell's retirement contributions because Cornell failed to meet her burden under RCW 26.19.071(5)(g). We remand the support order to strike only Cornell's retirement contribution deduction and recalculate Cornell's income as well as the transfer payment amount.

## V. ATTORNEY FEES

Codekas argues that the trial court improperly awarded attorney fees to Cornell under RCW 26.09.260(13) and CR 11 because Codekas's cross petition and defense to Cornell's petition to modify the parenting plan was "'not well grounded in fact'" and "'interposed for an improper purpose.'" Opening Br. of Appellant at 30. Cornell argues that the trial court's award of attorney fees was supported by the record and adequate findings. Cornell also requests fees on appeal under RAP 18.1 and RCW 26.09.140.

Attorneys and parties who sign and file a pleading, motion, or legal memorandum to the court must comply with CR 11 requirements. These include that the pleading is well grounded in fact and warranted by existing law and that it was not brought to harass, cause unnecessary delay, or increase costs in litigation. CR 11. The rule's purpose is to deter baseless filings and curb abuses of the judicial system but not to chill enthusiasm or creativity in pursuing factual or legal theories. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). CR 11 requires a pleading have a factual and legal basis. When a court finds that either is missing, the court must also find that the pleading's author failed to conduct a reasonable inquiry into the pleading's factual and legal basis. *Bryant*, 119 Wn.2d at 220.

We review an attorney fee award for an abuse of discretion, and we will not interfere with the award unless the trial court abuses its discretion by basing its decision on unreasonable or

untenable grounds. *Bay v. Jensen*, 147 Wn. App. 641, 659, 196 P.3d 753 (2008). Similarly, we review a trial court's decision on the question of bad faith for abuse of discretion. *In re Pearsall-Stipek*, 136 Wn.2d 255, 265, 961 P.2d 343 (1998).[7] Under RCW 26.09.260(13), "[i]f a court finds that a motion to modify a prior decree or parenting plan has been brought in bad faith, the court shall assess the attorney's fees and court costs of the nonmoving parent against the moving party." Bad faith litigation includes prelitigation misconduct, procedural bad faith, and substantive bad faith. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 927, 982 P.2d 131 (1999).

The trial court found that Codekas's cross petition for a modification was an abusive use of conflict and that Codekas held the opinion that C.C. was sexually abused up until the day of trial, which "complicated the litigation." 4 VRP at 614. The trial court found that Codekas's actions "intended to influence the outcome" of the litigation and "considering that all of the investigating agencies had concluded their work and essentially found the allegations to be without merit," the trial court ordered sanctions under RCW 26.09.260(13) and CR 11 for bad faith litigation on behalf of Codekas. 4 VRP at 614. The court awarded $5,000 to Cornell.

The trial court also made written findings to support its imposition of sanctions. The trial court stated that Codekas's cross petition for a modification and defense to Cornell's petition was made in bad faith, not well grounded in fact, and interposed for improper purpose such as to harass Cornell and to improperly leverage her into dismissing her modification petition. To support its finding, the trial court referenced Codekas dropping his cross petition for a modification on the

---

[7] In the absence of any findings of bad faith, the trial court abused its discretion in awarding attorney fees under the authority requiring a finding of bad faith. *Pearsall-Stipek*, 136 Wn.2d at 266-67.

day of trial, Codekas's lack of credibility, and the testimony of Hutchins-Cook and the GAL, whose investigations contradicted allegations made by Codekas in support of his cross petition.

Codekas challenges the trial court's finding that his cross petition and defense to Cornell's petition were made in bad faith, arguing that "it is not bad faith to defend against a petition for modification" nor was his cross petition brought in bad faith just because he "failed to prove his allegations." Opening Br. of Appellant at 31.

However, by December 14, 2015, both CPS and the Tacoma Police Department had determined that the molestation allegation was unfounded. Codekas did not drop his protection order against S.C. until January 2016, and he dropped the order in exchange for Cornell dropping her domestic violence protection order against him. Codekas also referenced the molestation allegation in his petition for modification in July 2016.

Furthermore, Codekas was not simply defending against Cornell's petition for modification. Codekas filed a cross petition to modify the parenting plan in July 2016, which sought primary custody. At trial, in October 2017, Codekas testified that in as early as April 2017, his position had changed and he sought to maintain only split custody. However, Codekas did not drop his cross petition seeking primary custody until months later, on the day of trial.

Codekas's trial testimony revealed that Codekas had no intention of seeking sole custody, confirming that this cross petition to modify the parenting plan was brought in bad faith and for an improper purpose. In this context, dropping his petition the day of trial shows "prelitigation misconduct," which suggests Codekas's motivation for filing his petition was out of spite against Cornell. His actions are a true abuse of the justice system.

The trial court also based its award on Codekas's lack of credibility, Hutchins-Cook's report, and the GAL report. As stated above, we do not substitute our judgment for the trial court's judgment, weigh the evidence, or evaluate witness credibility. *Wilson*, 165 Wn. App. at 340. The GAL report states that she has "serious concerns" about how Codekas and Low handled the sexual assault allegation, and both reports, in addition to the agencies investigating the allegation, found that the allegation was unfounded. CP at 33. Still, Codekas dismissed only his sexual assault petition against S.C. when Cornell agreed to dismiss her domestic violence protection order against Codekas. The trial court did not abuse its discretion by exercising its equitable powers by awarding fees based on bad faith pursuant to RCW 26.09.260(13) and CR 11.

## VI. ATTORNEY FEES ON APPEAL

Cornell requests her fees under RAP 18.1 and RCW 26.09.140, arguing that Codekas's appeal was frivolous. Codekas argues that because his appeal is "well-grounded in law and in fact; indeed, requiring reversal," we should deny Cornell's request for fees on appeal. Reply Br. of Appellant at 15.

RCW 26.09.140 gives appellate courts "discretion to award attorney fees to either party based on the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Pennamen*, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006). A showing of financial need must be made by affidavit and filed no later than 10 days before we are scheduled to consider the appeal. RAP 18.1(c). Cornell has not filed an affidavit of need at this time, thus she is not entitled to fees under RAP 18.1(c).

Under RAP 18.1(a), a party on appeal is entitled to attorney fees if a statute authorizes the award. RAP 18.9 authorizes an award of compensatory damages against a party who files a

30

frivolous appeal. *See Kearney v. Kearney*, 95 Wn. App. 405, 417, 974 P.2d 872 (1999). An appeal is frivolous if there are "'no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility' of success." *In re Recall of Feetham*, 149 Wn.2d 860, 872, 72 P.3d 741 (2003) (internal quotation marks omitted) (quoting *Millers Cas. Ins. Co. of Texas v. Briggs*, 100 Wn.2d 9, 15, 665 P.2d 887 (1983)). We consider the record as a whole and resolve all doubts against finding an appeal frivolous. *Delany v. Canning*, 84 Wn. App. 498, 510, 929 P.2d 475 (1997) (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980)).

Although the majority of Codekas's claims lack merit, Codekas's appeal is not totally devoid of merit. *Feetham*, 149 Wn.2d at 872. Codekas succeeded in striking three findings of fact and on the issue of Cornell's retirement contributions. Therefore, we decline Cornell's request for attorney fees on appeal on this basis.

Last, RAP 18.1(b) requires a party to devote a section of its opening brief to the request for fees and include supporting argument. Cornell's brief simply states, "Cornell requests her fees on the authority of RAP 18.1 and RCW 26.09.140 and that his appeal is frivolous." Corrected Br. of Resp't at 20. Her brief does not provide any substantive argument why she should be awarded fees due to Codekas's "frivolous appeal." Because Cornell does not provide us with any substantive argument, we deny her request for an award of attorney fees on appeal.

CONCLUSION

We hold that the trial court's domestic violence finding, and findings of fact 2, 11, 13, 18, 19, and 31 are supported by substantial evidence on the record. We remand to the trial court to correct findings of fact 2, 11, and 13 consistent with this opinion and strike findings of fact 3, 4

and 32. We further hold that the trial court did not abuse its discretion when finding Codekas's income was "unknown" and imputing his income. We hold that the trial court abused its discretion when deducting Cornell's retirement contributions from her income calculations and instruct the trial court to strike Cornell's contributions and recalculate her income for child support purposes. Last, we hold that the trial court did not abuse its discretion when awarding Cornell attorney fees and we decline to award Cornell fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CRUSER, J.

We concur:

_____
WORSWICK, P.J.

_____
GLASGOW, J.