[No. 40402-8-II.    Division Two.    December 6, 2011.]

*In the Matter of the Marriage of* PAMELA G. WILSON, *Respondent*, and WALTER B. WILSON, *Appellant*.

334

*Herbert Gelman*, for appellant.
*Matthew J. Hutchins*, for respondent.

¶1 Van Deren, J. — Walter Wilson appeals the trial court's orders from this marriage dissolution action. He alleges 14 assignments of error relating to the trial court's orders (1) setting child support, (2) setting maintenance, (3) granting moving and relocation expenses, (4) allocating the community debt, (5) awarding his former wife attorney fees, and (6) denying his reconsideration motion. We remand for (1) review of the child support order, (2) clarification of the deductions in the child support order, (3) entry of an *Arvey*[1] worksheet, (4) modification of maintenance only to the extent as a result of any change to the ordered child support payment within the trial court's discretion, (5) determination of the amount of Pamela's attorney fees award incurred at trial, and (6) review of the propriety and amount of attorney fees incurred on appeal. We affirm the debt division and the award of relocation costs.

## FACTS

¶2 Walter and Pamela Wilson[2] were married on February 27, 1982. During their marriage they had seven children. Walter and Pamela lived in Utah with their children

---

[1] *In re Marriage of Arvey*, 77 Wn. App. 817, 825-26, 894 P.2d 1346 (1995).

[2] Because the parties have the same last name, we refer to them by their given names. We mean no disrespect.

for the majority of their marriage. In January 2007, Pamela and two of their daughters traveled to Washington so that Pam could care for her terminally ill mother. In April 2007, the rest of the family moved to Washington to join them.

¶3 Walter and Pamela separated on August 21, 2008, 26 years after their marriage. When the marriage dissolved in January 2010, three of their children were still under age 18 and dependent. Their 14-year-old daughter and 15-year-old son lived with Pamela in Graham, Washington, while their 17-year-old son lived with his father in Provo, Utah.

¶4 Walter has a master's degree in business administration. During their marriage he was the primary provider and, until the past five years, he was the sole provider. Since 1997, he has worked at Oracle Corporation. Before working at Oracle, Walter was employed at Novell for almost 10 years. At Novell, he worked as a sales analyst, an operations manager, and then as director of administration. When the trial court heard this matter at trial, Walter was a senior technical specialist at Oracle. Although he had been making "well over $100,000" per year before trial, Walter testified that available overtime had decreased and, as of June 2009, he was making approximately $6,000 to $7,000 per month. Report of Proceedings (RP) at 116. But based on his earnings during the first eight months of 2009, Walter's annual gross income appeared to be $131,802.

¶5 During their 26-year marriage, Pamela for the most part stayed home and took care of the house and children while Walter worked. She held a few part time jobs, including one at a photography laboratory, which paid $7.50 per hour; and, for a few months, she worked at Stouffers. Before the parties filed for divorce, Pamela began working at Vadis, a consulting firm that assisted people with disabilities to find employment. Her monthly gross income from Vadis was $2,060.00; the trial court used this figure in calculating child support.

¶6 Before trial, Pamela quit her job at Vadis to work as a massage therapist in Issaquah.[3] She testified that it was her plan to enroll in a nurse practitioner's program at nearby Bellevue College and to continue working while going to school following the divorce. She testified that the nurse practitioner program would cost at least $6,000 for each semester and would take six years to complete. She estimated that she would be able to make $2,500 per month as a massage therapist while she was attending school.

¶7 On February 26, 2009, the trial court entered a temporary order that required Walter to pay $500.00 per month for maintenance and $986.48 per month for child support. The trial court ordered him to pay the mortgage on the family home, and the court further ordered the parties to list the home for sale. In June 2009, Walter stopped paying the mortgage on the home. The parties unsuccessfully attempted a short sale of the home to avoid foreclosure. At trial, the parties stipulated that there was no equity in the home where Pamela was still residing with two of their children.

¶8 Based on Pamela's and Walter's testimony, and argument from each of their attorneys, the trial court entered its oral ruling on October 26. The trial court found that Walter's 2008 gross income was $13,000.00 per month and his 2009 monthly gross income was $11,851.00. The court calculated his 2009 monthly net income as $8,911.52. The trial court determined that Pamela's 2009 monthly net income was $1,750.00. Combining Walter's and Pamela's individual 2009 monthly net incomes, the trial court calculated their 2009 joint monthly net income as $10,661.00. Based on this number, the child support order required Pamela to contribute 17 percent to the support of the children and Walter to contribute 83 percent. The trial court ordered Pamela to pay the $724.00 Capital One credit card balance and Walter to pay the other debts, including the

---

[3] In 2005, Pamela began massage therapist training and became licensed in 2007.

Chase VISA credit card and credit union debts totaling over $27,000.00. Although there was no equity in the family home, the trial court awarded the family home to Walter if he could avoid foreclosure.

¶9 Over the course of the pending dissolution action, Walter proposed multiple child support worksheets showing varying income and deductions. In setting child support, the trial court found that the support obligation was $1,109 per child for a three-child family. The trial court then calculated what each party owed for child support based on the number of children living with each parent and the percentage of the total income each parent would contribute. After deducting what Pamela would owe Walter for the one child in his care in Utah, the trial court determined that Walter owed Pamela $1,652 per month for child support. The child support worksheet does not show how the trial court treated deductions from income or calculated medical or other extra expenses for the children.

¶10 The trial court also ordered Walter to pay maintenance to Pamela. In doing so, it considered the statutory factors, including the length of their marriage and Pamela's need in accordance with Walter's ability to pay. The court stated:

> [T]he parties opted into a traditional marriage arrangement where [the] wife stayed at home with the children, and [the] husband went out to work; and that is, certainly, nothing that one can disparage; but it does have some costs in the event that the parties get a divorce because whoever stays at home . . . is not putting into Social Security. They don't have a chance to build up any kind of an independent retirement.

RP at 212-13. The trial court also considered the "extreme disparity in education" and "extreme disparity in income" between Walter and Pamela. RP at 213. The trial court also noted that Walter had a minimal pension account with Brigham Young University and a 401(k) plan, that Walter had cashed out the parties' community stock benefits but did not divide the proceeds equitably with Pamela, and that

the tax refund "d[id] not appear to have been divided in an equitable manner." RP at 213. The trial court stated that it did not have "a great deal of faith in [Walter]" because he controlled the parties' finances and stopped paying the mortgage, put the utilities in Pamela's name without informing her, and stopped making the utility payments that he had been ordered to pay. RP at 214.

¶11 The trial court found maintenance was necessary after it "considered all of these factors" and that Pamela would now attempt to go "into the work force to try to make up for all the time that she was [at] home." RP at 213. The court awarded spousal maintenance to Pamela in the amount of $2,500 per month for three years, and then reduced maintenance to $2,000 per month for the following three years to assist with her plans to become a nurse practitioner. Spousal maintenance would then decrease to $1,500 for the next three years and to $1,000 for the last three years. After 12 years, spousal maintenance would terminate.

¶12 Walter was also ordered to contribute $2,500 toward Pamela's moving expenses since she and the two children would be moving out of the Graham home. The trial court awarded Pamela $7,500 in attorney fees. The trial court entered written factual findings and legal conclusions on January 15, 2010, consistent with its oral ruling.

¶13 Walter unsuccessfully moved for reconsideration. Walter appeals.

## ANALYSIS

¶14 Walter asserts 14 assignments of error relating to the trial court's orders (1) setting child support, (2) setting maintenance, (3) granting moving and relocation expenses, (4) allocating the community debt, (5) awarding his former wife attorney fees, and (6) denying his reconsideration motion.

■ ■ ¶15 We review dissolution orders for abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776,

340

791 P.2d 519 (1990); *In re Marriage of Bell*, 101 Wn. App. 366, 371-72, 4 P.3d 849 (2000). The party challenging a trial court's dissolution decision, here Walter, has the burden of demonstrating that the trial court manifestly abused its discretion. *Griffin*, 114 Wn.2d at 776. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court's decision is manifestly unreasonable if it is based on an incorrect legal standard. *Littlefield*, 133 Wn.2d at 47.

■■ ¶16 We review the trial court's findings of fact for substantial evidence. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law. *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). An appellate court should "not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility." *Greene*, 97 Wn. App. at 714.

¶17 Walter argues that the trial court erred in calculating child support payments because it (1) did not use required child support worksheets and, thus, violated RCW 26.19.035(3); (2) did not include the spousal maintenance awarded to Pamela as part of her income or deduct it from Walter's income in calculating the amount of child support owed; (3) made mathematical errors in the child support worksheet and failed to itemize deductions; (4) included Walter's overtime income in computing his child support obligation; (5) determined Walter's income based on his

historic earnings; and (6) failed to attach the *Arvey*[4] worksheet to its child support worksheet.

¶18 We disagree with Walter's first argument that the trial court erred because it did not utilize the required child support worksheet. On January 15, 2010, the trial court entered signed Washington State child support schedule worksheets. RCW 26.19.035(3) requires that "[w]orksheets in the form developed by the administrative office of the courts shall be completed under penalty of perjury and filed in every proceeding in which child support is determined." Thus, using child support worksheets, based on statewide guidelines, is mandatory. RCW 26.19.035(3), (4); *see In re Marriage of Sacco*, 114 Wn.2d 1, 3-4, 784 P.2d 1266 (1990). Walter has not alleged that the form the trial court entered deviated from the form the Washington administrative office of the courts requires. But he is correct that the trial court, taking into consideration the split custody of their three children and doing the *Arvey* calculation to allocate the child support obligation, did not attach a separate worksheet showing its calculation. But the trial court's oral decision explains this calculation. Thus, this argument fails.

¶19 Walter also argues that the trial court erred by not deducting the spousal maintenance payments that the court ordered him to pay Pamela from his income and by not including it as her income. Under former RCW 26.19-.071(3)(q) (2008),[5] spousal "[m]aintenance actually received" is included in gross income and, under former RCW 26.19.071(5)(f), "[c]ourt-ordered [spousal] maintenance to the extent actually paid" is deducted from a parent's gross income. Chapter 26.19 RCW requires that only maintenance "actually received" or "actually paid" be included in

---

[4] *Arvey*, 77 Wn. App. at 825-26 (establishing the appropriate method for calculating child support under a "split-custody" arrangement).

[5] Former RCW 26.19.071 (2008) was in effect on August 21, 2008, the date the parties separated. *See* LAWS OF 2008, ch. 6, § 1038.

or deducted from a parent's gross income. Former RCW 26.19.071(3)(q), (5)(f).

¶20 Although former RCW 26.19.071's plain language requires a trial court to consider spousal maintenance "actually paid" and "actually received" in calculating a parent's income for purposes of determining child support obligations, the statute is silent as to whether a trial court must consider spousal maintenance that has been ordered but has not yet been paid or received. Reading former RCW 26.19.071 in harmony with the spousal maintenance statute, RCW 26.09.090, we hold that the trial court did not abuse its discretion by calculating Walter's child support obligation without first deducting his ordered spousal maintenance obligation. *See Alpine Lakes Prot. Soc'y v. Dep't of Ecology*, 135 Wn. App. 376, 390, 144 P.3d 385 (2006) (We harmonize the provisions of an act to ensure its proper construction.).

¶21 RCW 26.09.090 states in part:

(1) In a proceeding for dissolution of marriage[,] . . . the court may grant a maintenance order for either spouse. . . . The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, *including the extent to which a provision for support of a child living with the party includes a sum for that party.*

(Emphasis added.)

¶22 RCW 26.09.090(1)(a) thus directs a trial court to calculate the need for spousal maintenance only *after* it has determined the parties' child support obligations. This statutory directive requires the trial court to consider the impact of child support on the ability of the payor to pay

maintenance, before ordering maintenance. It does not require that the trial court, after already taking child support into consideration, recalculate child support after a maintenance amount is determined.

¶23 Walter provides no authority supporting his contention that maintenance awarded contemporaneously with child support must be included in each parent's income calculation.[6] We note that the legislature articulates its intent to ensure that child support orders "provide additional child support *commensurate with the parents' income.*" RCW 26.19.001 (emphasis added). And the legislature also included the language "[m]aintenance actually received" and "maintenance to the extent actually paid" in the calculation of the parents' income for purposes of child support. Former RCW 26.19.071(3)(q), (5)(f). The conflict between RCW 26.09.090(1)(a)'s direction and RCW 26.19-.001, the purpose statement of the child support statute, creates an ambiguity that confronts the trial court in complying with worksheet directions when setting child support.[7] In this instance, we resolve the ambiguity to hold that the trial court did not abuse its discretion in not including the maintenance in the child support worksheets.[8] Accordingly, Walter's argument fails.

¶24 Next, Walter alleges that "none of the numbers actually used [in the child support worksheet] are mathematically correct, nor is there any evidence to support items included in the worksheets." Br. of Appellant at 13.

---

[6] *See* 1 WASH. STATE BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK § 28.5(4)(e) at 28-29 (2d ed. & Supp. 2006).

[7] The legislature should resolve this ambiguity at its earliest opportunity to guide the trial courts and parents in reaching a just result when child support and maintenance are both ordered.

[8] Although we hold that here the trial court did not abuse its discretion in light of the ambiguity created by the conflicting provisions of RCW 26.19.001 and RCW 26.09.090(1)(a), we note that given RCW 26.09.090(1)(a)'s explicit requirement that a trial court consider child support obligations when determining the need for spousal maintenance, accepting Walter's contention could lead to the possible result of a cycle of calculating and recalculating obligations under the child support and spousal maintenance statutes.

Specifically, Walter states that (1) his and Pamela's gross incomes are incorrect; (2) the trial court failed to itemize his deductions; and (3) the amount listed on line 13 as total health care, day care, and special expenses was incorrect and, because the amount on line 13 was incorrect, correspondingly, the amounts listed on the calculation of each parent's health care obligation on line 14 were incorrect. Walter also contends that the trial court erred by including his overtime income in its income calculation, and that it computed his income based on his "historic earnings." Br. of Appellant at 15. Walter did not submit with his brief on appeal a copy of any proposed child support worksheet that he submitted to the trial court or suggest to us what the numbers should have been based on the record below.

¶25 Here, the trial court's oral ruling detailed its calculation of Walter's annual income based on the most recent pay information that he had submitted to the court. Substantial evidence supports the trial court's determination of the parties' respective incomes. Walter's contention that it was based on historical earnings lacks merit. Also, the trial court correctly included Walter's overtime pay in its income calculation, as former RCW 26.19.071(3)(e) requires.

¶26 But Walter is correct that the trial court did not itemize its deductions on the child support worksheet. First, the trial court failed to itemize deductions from Walter's and Pamela's gross income. The trial court's oral ruling indicated a deduction of $2,072 for taxes, but it is unclear if that includes Federal Insurance Contributions Act tax and other applicable deductions. Also, the trial court did not itemize the health care and other child rearing expenses on the worksheet's third page. The trial court listed Walter's $400 health care expense but then, without listing any other expenses, the trial court indicated that the total cost

for health care, day care, and special expenses was $547.[9] Line 14 of the worksheet should list each parent's financial obligation for health care, day care, and special expenses by multiplying the total expense by the percentage—Walter 83 percent and Pamela 17 percent—each parent is obligated to pay. But, the trial court did not do this calculation and it is unclear how the court determined that Walter was obligated to pay $235 of the health expenses and Pamela was obligated to pay $46. These amounts do not appear to be based on the trial court's total expense calculation of $547. Thus, substantial evidence does not support these findings in the child support worksheet.

¶27 We remand for review of the child support order, correction of any mathematical errors, and itemization of all deductions. Moreover, although the trial court's oral ruling indicates it was using *Arvey* calculations to determine each parent's child support obligation to the other parent, it did not attach an *Arvey* worksheet to its order. On remand, we order the trial court to attach a completed *Arvey* worksheet with its child support worksheet order.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

HUNT and JOHANSON, JJ., concur.

---

[9] We note that Walter's proposed child support worksheet submitted with his reconsideration motion proposed expenses totaling $547. His itemization showed $522 for health insurance expenses and $25 for education expenses. Although not clear from the record before us, it is possible that this is the correct calculation.