IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80221-6-I |
| | ) | |
| STEPHEN PAUL CONDIE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMY RENEE CONDIE, n/k/a | ) | PUBLISHED OPINION |
| AMY RENEE BATEMAN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — The child support statute broadly includes income and resources from any source when calculating child support. We conclude that income and net income for purposes of child support include contemporaneously ordered spousal maintenance. We disagree with In re Marriage of Wilson,[1] where the court held conflicts between the child support and maintenance statutes should be harmonized to allow the trial court to ignore contemporaneously ordered maintenance when computing income and net income. The trial court should have included the maintenance it

---

[1] 165 Wn. App. 333, 267 P.3d 485 (2011).

contemporaneously ordered Stephen Condie to pay Amy Bateman when computing child support under the child support schedule.

Stephen Condie otherwise fails to establish any abuse of discretion regarding the parenting plan, division of property, and standard calculation of child support.

Therefore, we reverse the trial court's failure to include contemporaneously ordered maintenance when computing child support, affirm as to all other issues, and remand for further proceedings consistent with this opinion.

FACTS

Stephen Condie and Amy Bateman were married in 2009 and separated in 2018. Condie and Bateman have one daughter, E.C.

The dissolution trial occurred over four days in April 2019. In the final parenting plan, the court ordered that "neither parent shall take the child out of the country, except to Canada and Mexico, until she reaches the age of 13 years unless otherwise agreed by the parties in writing."[2] The court explained the limitation was based on E.C.'s "sensory impairment and limited food tolerance."[3]

---

[2] Clerk's Papers (CP) at 223.

[3] Id.

In the dissolution decree, the court entered a 60/40 property distribution in favor of Bateman. The court ordered Condie to pay maintenance in the amount of $6,500 a month for a little over three years. The court also ordered Condie to pay child support in the amount of $1,404.15 a month. Condie moved for reconsideration on various issues. The court denied Condie's motion.

Condie appeals.

## ANALYSIS

### I. Contemporaneously Ordered Spousal Maintenance and Child Support Allocation.

Relying on Wilson, the trial court did not include the maintenance it contemporaneously ordered Condie to pay Bateman when determining income and net income to compute child support on the child support schedule.

The Wilson court interpreted the maintenance statute, RCW 26.09.090(1)(a), as requiring computation of child support before spousal maintenance.[4] And the court determined a gap existed between the child support and maintenance statutes:

> Although former RCW 26.19.071's plain language requires a trial court to consider spousal maintenance "actually paid" and "actually received" in calculating a parent's income for purposes of determining child support obligations, the statute is silent as to whether a trial court must consider spousal maintenance that has been ordered but has not yet been paid or received.[5]

[4] Wilson, 165 Wn. App. at 342-43.

[5] Id. at 342.

3

Reasoning this silence required it to harmonize the maintenance and child support statutes, the Wilson court concluded the trial court had discretion to ignore contemporaneously awarded maintenance when computing child support:

> Reading former RCW 26.19.071 in harmony with the spousal maintenance statute, RCW 26.09.090, we hold that the trial court did not abuse its discretion by calculating [the father's] child support obligation without first deducting his ordered spousal maintenance obligation.[6]

The court also concluded there was an ambiguity in the child support statute:

> The conflict between RCW 26.09.090(1)(a)'s direction and RCW 26.19.001, the purpose of the child support statute, create an ambiguity that confronts the trial court in complying with worksheet directions when setting child support.[7]

And the Wilson court resolved that ambiguity by again concluding the trial court had discretion to ignore contemporaneously awarded maintenance when computing child support:

> In this instance, we resolve the ambiguity to hold that the trial court did not abuse its discretion in not including the maintenance in the child support worksheets.[8]

We disagree.

First, the core question is the meaning of "income" and "net income" for purposes of child support calculations. The child support statute does not

---

[6] Id.

[7] Id. at 343.

[8] Id.

define "income" or "net income."[9] Because no statute defines "income" for purposes of child support calculations, we look to dictionary definitions:[10] (1) "a gain or recurrent benefit that is usually measured in money" or (2) the "value of goods and services received."[11] These definitions accord with the expansive view of "income" used in RCW 26.19.071. RCW 26.19.071(1) broadly directs that "[a]ll income and resources of each parent's household shall be disclosed and considered by the court"[12] when determining a parent's income. RCW 26.19.071(3) then directs that "monthly gross income shall include income from any source, including: . . . (q) [m]aintenance actually received."[13] RCW 26.19.071(5) provides that "[t]he following expenses shall be disclosed and deducted from gross monthly income to calculate net monthly income: . . . (f) [c]ourt-ordered maintenance to the extent actually paid."

When interpreting a statute, "[t]he court's fundamental objective is to ascertain and carry out the [l]egislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an

---

[9] RCW 26.19.011.

[10] Samish Indian Nation v. Dep't of Licensing, No. 79733-6-I, slip. op. at 5 (Wash. Ct. App. Aug. 31, 2020), http://www.courts.wa.gov/opinions/pdf/797336.pdf.

[11] Webster's Third New International Dictionary 1143 (2002).

[12] (Emphasis added.)

[13] (Emphasis added.)

expression of legislative intent."[14] "'[T]he plain meaning is . . . derived from what the [l]egislature has said in its enactments, but that meaning is discerned from all that the [l]egislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'"[15]

The child support statutes are expressly intended to divide the child support obligation between parents in proportion to their income.[16] As noted, the child support statute directs the trial court to consider "[a]ll income and resources" of the parents when determining child support.[17] And maintenance is a "recurrent benefit." Consistent with the broad directive of the statute and the dictionary definition of income, we conclude contemporaneously ordered maintenance is income to the recipient and an expense to the payor for purposes of the child support statute.

Contrary to Wilson, we do not read the child support statutes to promote a presumption that parents contemporaneously ordered to pay maintenance are likely to default. The statutory references to "maintenance paid" and "maintenance received" logically apply to maintenance obligations from a prior marriage or maintenance award where there is a history of payments actually

---

[14] State, Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing State v. J.M., 144 Wn.2d 480, 28 P.3d 720 (2001)).

[15] Magney v. Truc Pham, 195 Wn..2d 795, 803, 466 P.3d 1077 (2020) (first and second alterations in original) (quoting id. at 11)).

[16] RCW 26.19.001.

[17] RCW 26.19.071(1).

made or missed. When the court makes a contemporaneous award of maintenance between the parents in a pending dissolution, there is no such payment history as to that contemporaneous award. Contemporaneously ordered maintenance must be considered when determining income and net income for purposes of the child support schedule.

Second, much of the parties' argument on appeal, like the analysis in Wilson,[18] focuses upon perceived conflicts in the mechanics and timing of determining maintenance and child support. The focus on mechanics is not compelling.

The Wilson court concluded there was a conflict between the maintenance and child support statutes requiring that the court first determine child support. The maintenance statute, RCW 26.09.090(1)(a), recites that the court is to consider "the financial resources of the party seeking maintenance . . . including the extent to which a provision for support of a child living with the party includes a sum for that party." But contemporary child support awards are for the benefit of the child.[19] For purposes of the child

---

[18] 165 Wn. App. at 342.

[19] See 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 34:4, at 402 (2nd ed. 2015) ("[T]he amounts established by the child support schedule are not intended as including support for the child's custodian.") (citing ch. 26.19 RCW); see also Hammack v. Hammack, 114 Wn. App. 805, 808, 60 P.3d 663 (2003) (parents hold child support payments as trustees for the children) (citing In re Marriage of Pippins, 46 Wn. App. 805, 808, 732 P.2d 1005 (1987)).

support schedule, there is no portion of a child support award that includes a sum for the parent. There is no need to consider child support awards under the child support schedule as part of the calculus for determining the amount of a maintenance award.

Further, the maintenance statute and the child support worksheets do not present an insoluble accounting conundrum. Because contemporaneously awarded maintenance must be included in the calculation of child support under the child support schedule, the court must first determine any maintenance award and then incorporate that amount into the child support calculation. In practice, neither RCW 26.09.090(1)(a) nor RCW 26.19.071 preclude a trial court from simultaneously looking at various scenarios for maintenance and child support and running various worksheet alternatives before arriving at a final decision.[20] The trial judge is not beset with an endless loop of mechanical computations.

Third, the approach taken in Wilson invites an inefficient use of judicial resources. If a court ignores its contemporaneous maintenance order when calculating initial child support payments, a party could seek a modification after the first maintenance payment because the payment will have created a history of maintenance "actually paid" and "actually received." Income and net income will necessarily have changed in the amount of the maintenance paid and

---

[20] Consistent with this observation, the trial court on remand has the discretion to determine whether to revisit the amount of the maintenance award.

received and, arguably, such a change may qualify for a child support modification.  Such an approach is not consistent with an efficient use of judicial resources.

Finally, Bateman argues we should apply the rules of statutory construction, including the legislature's acquiescence in <u>Wilson</u>'s holding, because the legislature has not amended RCW 26.19.071(3) or .071(5) since that case was decided.  But we apply the rules of statutory construction only after determining there is an ambiguity in the statute,[21] and we do not find ambiguity here.

We disagree with the decision in <u>Wilson</u>.  Contemporaneously awarded maintenance must be considered when determining the income and net income of parents for purposes of calculating child support under the child support schedule.

## II.  Motion to Strike

Bateman's brief includes her motion to strike Condie's supplemental clerk's papers, consisting of Condie's declaration filed in the superior court on

---

[21] <u>In re Marriage of Ruff & Worthley</u>, 198 Wn. App. 419, 425, 393 P.3d 859 (2017) (quoting <u>Lake v. Woodcreek Homeowners Ass'n</u>, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)).  Even if we concluded the statutes were ambiguous, acquiescence by legislative inaction is "'not conclusive, but is merely one factor to consider.'"  <u>Fast v. Kennewick Pub. Hosp. Dist.</u> 187 Wn.2d 27, 39, 384 P.3d 232 (2016) (quoting <u>Safeco Ins. Cos. v. Meyering</u>, 102 Wn.2d 385, 392, 687 P.2d 195 (1984)).

January 8, 2020 and a declaration from Bateman filed on January 10, 2020, both regarding a posttrial motion for contempt.

The only motions permitted in briefs are those which, if granted, would preclude hearing the case on the merits.[22] But because there is no indication the trial court considered the materials on the motion for reconsideration and they are of no significance to the issues on appeal, they merit no consideration.

III. Travel Limitation

Condie contends the trial court abused its discretion when it imposed a travel limitation in the parenting plan. He argues this limitation was "not statutorily authorized or reasonable on this record."[23]

We review a trial court's parenting plan for abuse of discretion.[24] "The trial court's findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence."[25] "'Substantial' evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted."[26]

In the parenting plan, the court ordered that "neither parent shall take the child out of the country, except to Canada and Mexico, until she reaches the

---

[22] RAP 10.4(d).

[23] Appellant's Br. at 15.

[24] In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (citing In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)).

[25] Id. (citing Katare, 175 Wn.2d at 35).

[26] Id. (citing Katare, 175 Wn.2d at 35).

age of 13 years unless otherwise agreed by the parties in writing."[27] Condie contends this type of limitation "is permitted only upon a finding of harm to the child under RCW 26.09.191."[28] But in the parenting plan, the court explained the limitation was based on E.C.'s "sensory impairment and limited food tolerance."[29] In the order denying reconsideration, the court further found "that the child needs routine, stability, and structure due to her sensory impairment."[30] Additionally, the court clarified it was "not imposing a travel restriction based on [Condie's] conduct. Rather, the court was imposing a travel limitation because the <u>child</u> has special needs and the restriction was in the best interest of the child."[31]

In <u>In re Marriage of Littlefield</u>, our Supreme Court acknowledged the trial court's broad discretion when "developing and ordering a permanent parenting plan."[32] Generally, the objectives of a parenting plan are to:

(a) Provide for the child's physical care;

(b) Maintain the child's emotional stability;

(c) Provide for the child's changing needs as the child grows and matures, in a way that minimizes the need for future modifications to the permanent parenting plan;

---

[27] CP at 223.

[28] Appellant's Br. at 15.

[29] CP at 223.

[30] CP at 346.

[31] CP at 347.

[32] 133 Wn.2d 39, 51-52, 940 P.2d 1362 (1997).

(d) Set forth the authority and responsibilities of each parent with respect to the child, consistent with the criteria in RCW 26.09.187 and 26.09.191;

(e) Minimize the child's exposure to harmful parental conflict;

(f) Encourage the parents, where appropriate under RCW 26.09.187 and 26.09.191, to meet their responsibilities to their minor children through agreements in the permanent parenting plan, rather than by relying on judicial intervention; and

(g) To otherwise protect the best interests of the child consistent with RCW 26.09.002.[33]

The trial court's discretion must be exercised in accordance with the above objectives, the guidelines stated in RCW 26.09.187(3), the policy stated in RCW 26.09.002, and the "limiting factors which require or permit restrictions upon a parent's actions or involvement with the child" stated in RCW 26.09.191.[34]

Under RCW 26.09.191(1), the parenting plan must restrict mutual decision making if a parent has engaged in willful abandonment, certain types of abuse, or a history of domestic violence. Under RCW 26.09.191(2), a parent's residential time must be limited if the parent has engaged in conduct listed in section (1) or has been convicted of a sex offense. Here, in the parenting plan, the trial court determined neither parent had engaged in "abandonment, neglect, child abuse, domestic violence, assault, or [a] sex

---

[33] RCW 26.09.184.

[34] Littlefield, 133 Wn.2d at 52.

offense," and neither had any "[o]ther problems that may harm the child's best interests."[35]  As a result, the court did not impose any restrictions on either parent's decision making.

> The court may impose limitations under RCW 26.09.191(3) if:
>
> A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist: . . . Such other factors or conduct as the court expressly finds adverse to the best interests of the child.[36]

In In re Marriage of Chandola, our Supreme Court acknowledged "[t]here is some overlap between the trial court's authority under RCW 26.09.187, to establish the terms of the parenting plan, and its authority under RCW 26.09.191(3), to 'preclude or limit any provisions of the parenting plan.'"[37]

In Chandola, our Supreme Court expressly determined that "a court can substantially restrict a parent's contact with his or her child simply by establishing a residential schedule pursuant to its discretion under RCW 26.09.187."[38]  But the court concluded the residential restrictions at issue were not covered under the general provisions of section .187.  Rather, the court determined certain restrictions were available only under section .191. Chandola did not involve a  travel limitation like the one at issue in this case, but

---

[35] CP at 216.

[36] RCW 26.09.191(3)(g).

[37] 180 Wn.2d 632, 644, 327 P.3d 644 (2014).

[38] Id.

Condie relies upon the court's statement in Chandola that "restrictions on a parent's travel or conduct can be imposed only under RCW 26.09.191—not as features of the parenting plan under RCW 26.09.187."[39] To support this statement regarding travel limitations, the Chandola opinion cites In re Marriage of Katare.[40]

In Katare, our Supreme Court considered a challenge to a parenting plan provision that prohibited the father from taking the children out of the country.[41] The trial court imposed the restriction but determined RCW 26.09.191(3) did not apply. The restriction was based on evidence that the father had threatened to abduct the children to India.

As to the parenting plan, the court stated:

Relevant to this case, RCW 26.09.191(3)(g) allows the trial court to limit the terms of the parenting plan if it finds a parent's conduct is "adverse to the best interests of the child." Imposing such restrictions "require[s] more than the normal . . . hardships which predictably result from a dissolution of marriage."[42]

In Katare, the main issue was whether the restriction may be based on evidence of the risk of abduction by the father. "[T]he trial court need not wait for actual harm to accrue before imposing restrictions on visitation. 'Rather, the

[39] Id. at 645.

[40] 175 Wn.2d 23, 283 P.3d 546 (2012).

[41] Id. at 31.

[42] Id. at 36 (alteration in original) (quoting Littlefield, 133 Wn.2d at 55).

required showing is that a danger of . . . damage exists.'"[43]

Although in Chandola, our Supreme Court cited Katare for the broad principle that restrictions on a parent's travel may be imposed only under RCW 26.09.191(3), this statement was dicta because Chandola did not involve any travel restriction. And here, the limitation and surrounding circumstances are different than Katare. First, the travel limitation in this case applies to both parents; "neither parent shall take the child out of the country."[44] In Katare, the restriction applied only to the father. Second, the limitation in this case is based on E.C.'s "sensory impairment and limited food tolerance."[45] In Katare, the restriction was based on the risk of the father abducting the children to India. Here, in the order denying Condie's motion for reconsideration, the court stated it was "not imposing a travel restriction based on [Condie's] conduct."[46]

Finally, RCW 26.09.184 lays out the required provisions of a parenting plan. Specifically, RCW 26.09.184(6) provides the plan "shall include a residential schedule which designates in which parent's home each minor child shall reside on given days of the year, including provision for holidays, birthdays of family members, vacations, and other special occasions, consistent with the

---

[43] Id. (second alteration in original) (quoting In re Marriage of Burrill, 113 Wn. App. 863, 872, 56 P.3d 993 (2002)).

[44] CP at 223.

[45] CP at 223.

[46] CP at 347.

criteria in RCW 26.09.187 and 26.09.191."[47]  Section .187(3)(a) provides, with regard to residential provisions, "[t]he court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances."  The statute further provides the schedule must be consistent with RCW 26.09.191, but "[w]here the limitations of RCW 26.09.191 are not dispositive, the court shall consider" several factors, including "[t]he emotional needs and development level of the child."[48]

Unlike Katare, the travel limitation in this case was based on the general objectives of a parenting plan identified in RCW 26.09.187.  The limitation was not based on issues concerning parental conduct identified in RCW 26.09.191.  The court did not abuse its discretion because it did not apply section .191.  The court had authority to impose such a limitation under section .187.

Condie argues that "[w]hile substantial evidence might support the trial court's findings that E.C. had 'limited food tolerance' and some 'sensory impairment,' the trial court's findings do not support any conclusion that the travel restriction was reasonably calculated to prevent harm to E.C., or even in her best interests."[49]

---

[47] (Emphasis added.)

[48] RCW 26.09.187(3)(a)(iv).

[49] Appellant's Br. at 22.

Substantial evidence does support the court's findings that E.C. had sensory impairment and limited food tolerance. Bateman testified, around two years old, E.C. stopped eating and started throwing tantrums. E.C. had six or seven tantrums a day, lasting 20 minutes to one hour. Bateman testified E.C. had a limited food repertoire and often refused meals. E.C. was in occupational therapy to help with feeding and emotional regulation. Given this undisputed evidence, the court did not abuse its discretion when it determined E.C.'s sensory impairment and limited food tolerance rendered international travel inappropriate until E.C. was older. The court found E.C. required "routine, stability, and structure."[50] Condie challenges the logic of allowing travel to Mexico and Canada but no other countries. But it was within the court's discretion to consider the extent that routine, stability, and structure may not be as significantly impacted by travel to neighboring countries.

We conclude the court did not abuse its discretion when it limited both parents from taking the child out of the country.

IV. Community Property Division

Condie argues the trial court abused its discretion when it awarded 60 percent of the community property to Bateman. Specifically, Condie contends the trial court "failed to consider all the relevant factors under RCW 26.09.080"

---

[50] CP at 346.

and "placed singular weight on Bateman's economic circumstances."[51]

As a general rule, trial courts have broad discretion to divide property during a dissolution.[52]  When making a property disposition, the court must consider "all relevant factors including, but not limited to (1) [t]he nature and extent of the community property; (2) [t]he nature and extent of the separate property; (3) [t]he duration of the marriage or domestic partnership; and (4) [t]he economic circumstances of each spouse."[53]  The court's discretion is limited by the requirement that any division must be "'just and equitable after considering all relevant factors.'"[54]

Here, the court ordered the parties to sell the home, valued at $975,000: "The wife shall receive 75% of the net sales proceeds, and the husband shall receive 25% of the net sales proceeds.  The rest of the property shall be divided so that the overall division of community property is 60% to the wife and 40% to the husband."[55]  To achieve the overall division of community property, the court ordered the parties to use a brokerage account and, if necessary, a transfer of ownership of Condie's vested Google stock.

---

[51] Appellant's Br. at 15.

[52] In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).

[53] RCW 26.09.080.

[54] Muhammad, 153 Wn.2d at 803 (quoting RCW 26.09.080).

[55] CP at 228.

Condie argues the trial court failed to consider the duration of the marriage when distributing the community property. But in the court's oral ruling, the court stated it considered the duration of the marriage and acknowledged Condie and Bateman were married for eight-and-one-half years.[56] Condie contends this recitation was inadequate, but he does not provide any compelling authority or argument supporting his position. Additionally, other than a general observation that disproportionate property divisions tend to occur in longer term marriages, Condie does not address how the duration of the marriage weighed against the court's property division.

Condie also challenges the trial court's failure to consider Condie's responsibility for creating martial assets. Condie cites In re Marriage of Williams for the principle "that consideration of each party's responsibility for creating or dissipating marital assets is relevant to the just and equitable distribution of property."[57] Condie asks this court to remand for the trial court to consider this factor. But Condie fails to cite any authority requiring express findings regarding which party created a particular martial asset.

Condie also argues the trial court misapplied the fourth factor from RCW 26.09.080, "[t]he economic circumstances of each spouse." Condie claims the court's emphasis on this factor was an abuse of discretion. In the

---

[56] RP (Apr. 12, 2019) at 738.

[57] 84 Wn. App. 263, 270, 927 P.2d 679 (1996).

findings, the court determined "the driving factor in dividing the property is that the husband is in a much better economic position than the wife."[58]

> The husband is a high-wage earner, making more than $390,000 per year, and his ability to earn money will increase going forward. The husband has the ability to save for retirement and accumulate wealth over the course of his career. The evidence is that he will either remain at Google or make a career move that is more economically advantageous to him in the future.
>
> The wife has been a stay-at-home mother since 2010 in order to raise the parties' daughter. She currently attends school at Bellevue College and plans to apply to the radiology program. When she completes the radiology program, she will earn approximately $65,000 per year. Her projected graduation date is June 2022.[59]

Condie does not challenge the court's findings concerning each party's income, but he argues "[n]either Condie nor the marriage bears any fault for Bateman's choice to get a college degree in journalism, but then to later pursue work in a lower-wage field."[60] In other words, Condie argues it was an abuse of discretion for the court to award Condie 60 percent of the community property partially based on Bateman's testimony about pursuing a professional degree because she already had a college degree. Condie concedes this evidence, along with evidence of his earning potential, supported an uneven distribution in favor of Bateman, but he argues not to the extent of 60 percent of the

---

[58] CP at 229.

[59] Id.

[60] Appellant's Br. at 33.

community property. He argues 55 percent was the limit, but he fails to show 60 percent was an abuse of the court's broad discretion.

The court's award of 60 percent of the community property to Bateman was an "equitable and just" distribution based on the court's adequate consideration of the relevant factors under RCW 26.09.080.[61]

V. Stock Award

Condie also contends the trial court effectively distributed Condie's unvested stock awards three times. Condie argues the court erred in considering the stock "as property to be distributed to Bateman, as income when considering maintenance, and as income when calculating child support."[62] He argues the "court had to pick one or the other—the unvested stock awards were either property to be distributed or income to support awards of maintenance and child support transfer payments."[63]

Condie cites In re Marriage of Barnett, but Barnett does not support Condie's argument.[64] In Barnett, the major asset subject to distribution was a salvage business. The business was valued at $200,000. In the decree, the court awarded the wife a $100,000 lien against the business. The court also awarded the wife maintenance of $500 per month. Division Three of this court

---

[61] Williams, 84 Wn. App. at 270.

[62] Appellant's Br. at 15.

[63] Id. at 37.

[64] 63 Wn. App. 385, 818 P.2d 1382 (1991).

determined the court erred because "the same property was distributed twice."[65] This determination was based on the court's review of the record, which indicated the "maintenance award was an attempt to distribute Mrs. Barnett's share of the business."[66] "That distribution had, however, already been effected by the $100,000 lien to Mrs. Barnett for one half of the value of the salvage business."[67]

Condie argues the trial court considered his unvested Google stock in the first instance when it addressed child support and determined Condie's income was $397,000, "which includes his stock award from this past year."[68] As to the second instance, Condie points to the findings and conclusions and the court's categorization of Condie's "unvested Class C Google stocks" as separate property.[69] At the same time, the court noted the unvested stocks "have been considered in the overall division of assets."[70] As to maintenance, Condie cites the court's finding that he "has the resources to pay spousal support" to argue the court improperly considered the unvested stock a third time.[71]

---

[65] Id. at 388.

[66] Id.

[67] Id.

[68] RP (Apr. 12, 2019) at 748.

[69] CP at 230.

[70] Id.

[71] CP at 231.

In <u>Barnett</u>, the trial court explicitly distributed the $200,000 salvage business, twice. The record indicated the court intended the property distribution and maintenance award to compensate the wife for her share of the business. Here, the trial court did not award any part of the unvested stocks to Bateman. Rather, the court properly considered Condie's unvested stocks when analyzing the overall fairness of the property distribution and when determining Condie's ability to pay maintenance and child support.[72] The court did not repeatedly distribute the unvested stocks.

## VI. Spousal Support

Condie argues the trial court abused its discretion when it awarded maintenance because it "did not consider all the relevant factors."[73]

We review a trial court's award of maintenance for abuse of discretion.[74] Under RCW 26.09.090, the amount and duration of maintenance is limited by the requirement that the award be just, in light of the relevant factors. Those

---

[72] <u>See</u> RCW 26.09.080(4) ("[T]he court shall, without regard to misconduct, make such disposition of the property . . .as shall appear just and equitable after considering all relevant factors including, but not limited to . . . [t]he economic circumstances of each spouse."); RCW 26.09.090(1)(f) ("The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to . . . [t]he ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.").

[73] Appellant's Br. at 15.

[74] <u>In re Marriage of Mueller</u>, 140 Wn. App. 498, 510, 167 P.3d 568 (2007).

factors include, but are not limited to (1) the financial resources of the party seeking maintenance; (2) the time needed to acquire education necessary to obtain employment; (3) the standard of living during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; (6) and the ability of the spouse from whom maintenance is sought to meet his or her needs and obligations while providing the other spouse with maintenance.[75] "Nothing in RCW 26.09.060 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1). The statute merely requires the court to consider the listed factors."[76]

Here, in findings and conclusions, the trial court stated it considered the factors in RCW 26.09.090. The court ordered Condie to pay maintenance in the amount of $6,500 a month, beginning April 1, 2019 and ending August 2022:

> The court finds it is unlikely that the wife could secure employment at this time that would provide sufficient compensation to support her and her child. The court finds it appropriate that the wife is advancing her education and looking for a career that will be financially beneficial long-term. While the wife could be doing this at a faster pace, she has been contending with a number of stressors arising from the divorce such as single-parenting and returning to school. The court finds it reasonable for the wife to complete her education and graduate by June 2022.[77]

---

[75] RCW 26.09.090.

[76] Mansour v. Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

[77] CP at 231.

Condie acknowledges the court is not required to make specific factual findings on each of the RCW 26.09.090 factors, but he argues the court failed to conduct a fair consideration of the required factors. Specifically, Condie contends the court failed to take into consideration "the property distribution to Bateman, . . . that Bateman had no debt, or the relatively short duration of the marriage."[78]

However, Condie's argument ignores the general rule "that maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time."[79] And the record shows the court adequately considered the relevant factors. The findings and conclusions included several paragraphs of findings addressing the property distribution. Although the court did not repeat these facts in the subsequent spousal support section, we can infer the property distribution was one of the factors that the court considered when it looked at "the financial resources of the party seeking maintenance."[80] Similarly, without repeating the finding in the maintenance section, the court separately found Bateman had no debt. As to the duration of the marriage, in the court's oral ruling, the court acknowledged Condie and Bateman were married for eight-and-one-half years.

---

[78] Appellant's Br. at 15.

[79] Washburn v. Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

[80] CP at 231.

Condie also contends that even if the court did consider the relevant factors, "the record did not support such a high award."[81]  In his motion for reconsideration, Condie proposed $4,500 a month.  Condie argues substantial evidence does not support the court's finding that Bateman was unlikely to "'secure employment at this time that would provide sufficient compensation to support her and her child.'"[82]

At trial, evidence was presented Bateman had a degree in communications.  Bateman testified she previously worked as a preschool instructor, earning $15 an hour.  Starting in 2010, Bateman stayed home with E.C.  Bateman testified she planned to enroll in a radiology program.  At the time of trial, Bateman was completing her prerequisites before applying to the program.  She was expected to graduate in June 2022.

Condie focuses on Bateman's communications degree and previous work experience and argues Bateman failed to offer "expert testimony that a person with her education and work experience was unqualified for any job but minimum wage positions."[83]  But he presents no compelling authority supporting this proposition.  He fails to show the court abused its discretion when it accepted Bateman's testimony.  The court's maintenance award did not constitute an abuse of discretion.

---

[81] Appellant's Br. at 15.

[82] Id. at 43 (quoting CP at 231).

[83] Id.

VII.  Child Support

Condie also challenges the court's child support order.

We review the court's child support decision for abuse of discretion.[84] "The amount of child support rests in the sound discretion of the trial court.  This court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances."[85]

RCW 26.09.100(1) provides, "[A]fter considering all relevant factors . . . the court shall order either or both parents owing a duty of support to any child of the marriage or the domestic partnership dependent upon either or both spouses or domestic partners to pay an amount determined under chapter 26.19 RCW."  Under RCW 26.19.075(1)(d), "[t]he court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment."  If a party requests a deviation, "[t]he court shall enter findings that specify reasons for any deviation or any denial of a party's request."[86]  Even if reasons exist for deviation, "the court shall exercise discretion in considering the extent to which the factors would affect the support obligation."[87]  Generally, deviations are the

---

[84] In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002).
[85] Id.
[86] RCW 26.19.075(3).
[87] RCW 26.19.075(4).

exception to the rule "and should be used only where it would be inequitable not to do so."[88]

Here, in the child support order, the court imputed Bateman's monthly income at $2,401.10. The court determined Condie's monthly income was $22,070.10. Based on the standard calculation, the court ordered Condie to pay $1,404.15 a month in child support.[89]

Condie contends the court abused its discretion because it did not consider the 50/50 residential schedule. Condie did not request a deviation from the standard calculation until he moved for reconsideration. The court denied his request.[90] Although the court entered a 50/50 residential schedule, Condie does not establish the court abused its discretion when it denied his request for a deviation. Condie earned around ten times more than Bateman. And under the circumstances, the standard award was not unreasonable.

## VII. Fees on Appeal

Bateman requests fees on appeal under RCW 26.09.140 and RAP 18.1. RCW 26.09.140 extends to attorney fees on appeal. RCW 26.09.140

---

[88] Burch v. Burch, 81 Wn. App. 756, 761, 916 P.2d 443 (1996).

[89] Of course, on remand, the amount of the child support award under the child support schedule will be impacted by the consideration of the contemporaneous maintenance award.

[90] "[B]ecause (1) Petitioner did not sufficiently raise this issue at trial, and (2) the court finds that Petitioner's income far surpasses that of the Respondent, the Respondent has limited financial resources, and the Respondent needs the child support to adequately support her household." CP at 346.

authorizes an award of attorney fees on appeal based upon the parties' financial resources.[91] Bateman's financial declaration establishes the dramatic disparity in the parties' financial resources. Condie has the ability to pay, and Bateman has need. We grant Bateman's request, in an amount to be determined by a commissioner of this court upon compliance with RAP 18.1(d).

Therefore, we reverse the trial court's failure to include contemporaneously ordered maintenance when computing child support, affirm as to all other issues, and remand for further proceedings consistent with this opinion.

WE CONCUR:

---

[91] In re Marriage of Raskob, 183 Wn. App. 503, 520, 334 P.3d 30 (2014).

In re Marriage of Condie, No. 80221-6-I

APPELWICK, J. (concurring) — I respectfully concur in the opinion. The opinion correctly concludes the trial court erred by relying on In re Marriage of Wilson, 165 Wn. App. 333, 267 P.3d 485 (2011) when it ordered Mr. Condie to pay maintenance, but did not include that maintenance in Ms. Condie's income nor deduct it from his income when allocating the child support. I write separately to elaborate on why Wilson was wrongly decided.

The relevant discussion from Wilson focuses on interpreting the requirements of the child support statute and harmonizing it with the maintenance statute:[92]

> Walter also argues that the trial court erred by not deducting the spousal maintenance payments that the court ordered him to pay Pamela from his income and by not including it as her income. Under former RCW 26.19.071(3)(q) (2008), spousal "[m]aintenance actually received" is included in gross income and, under former RCW 26.19.071(5)(f), "[c]ourt-ordered [spousal] maintenance to the extent actually paid" is deducted from a parent's gross income. Chapter 26.19 RCW requires that only maintenance "actually received" or "actually paid" be included in or deducted from a parent's gross income. Former RCW 26.19.071(3)(q), (5)(f).
>
> Although former RCW 26.19.071's plain language requires a trial court to consider spousal maintenance "actually paid" and "actually received" in calculating a parent's income for purposes of determining child support obligations, the statute is silent as to whether a trial court must consider spousal maintenance that has been ordered but has not yet been paid or received. Reading

---

[92] The references to the language of former statutes is of no consequence to the analysis. The pertinent provisions were the same then and now.

former RCW 26.19.071 in harmony with the spousal maintenance statute, RCW 26.09.090, we hold that the trial court did not abuse its discretion by calculating Walter's child support obligation without first deducting his ordered spousal maintenance obligation.  See Alpine Lakes Prot. Soc'y v. Dep't of Ecology, 135 Wn. App. 376, 390, 144 P.3d 385 (2006) (We harmonize the provisions of an act to ensure its proper construction.).

RCW 26.09.090 states in part:

(1) In a proceeding for dissolution of marriage[,] . . . the court may grant a maintenance order for either spouse. . . . The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party.

(Emphasis added.)

RCW 26.09.090(1)(a) thus directs a trial court to calculate the need for spousal maintenance only after it has determined the parties' child support obligations.  This statutory directive requires the trial court to consider the impact of child support on the ability of the payor to pay maintenance, before ordering maintenance.  It does not require that the trial court, after already taking child support into consideration, recalculate child support after a maintenance amount is determined.

Walter provides no authority supporting his contention that maintenance awarded contemporaneously with child support must be included in each parent's income calculation.  We note that the legislature articulates its intent to ensure that child support orders "provide additional child support commensurate with the parents' income." RCW 26.19.001 (emphasis added).  And the legislature

also included the language "[m]aintenance actually received" and "maintenance to the extent actually paid" in the calculation of the parents' income for purposes of child support. Former RCW 26.19.071(3)(q), (5)(f). The conflict between RCW 26.09.090(1)(a)'s direction and RCW 26.19.001, the purpose statement of the child support statute, creates an ambiguity that confronts the trial court in complying with worksheet directions when setting child support. In this instance, we resolve the ambiguity to hold that the trial court did not abuse its discretion in not including the maintenance in the child support worksheets.

Id. at 341-44 (footnotes omitted) (alterations in original).

First, the Wilson court wrongly determined the two statutes needed to be harmonized. It did so because it misapplied the language of RCW 26.09.090(1)(a) that resources be considered "including the extent to which a provision for support of a child living with the party includes a sum for that party." This language implies that at some point child support awards in Washington may have included some money to support the receiving parent. However, when Wilson was decided, that language was an inoperative historical artifact.

Since 1988, child support is determined under chapter 26.19 RCW. It requires the basic support amounts for each child be taken from the economic table. RCW 26.19.020. That table is based on economic data on the costs of raising children.[93] It has no component or allowance for the support of a parent.

---

[93] The economic table was recommended by the Washington State Child Support Schedule Commission in its Report to the Legislature November 1987. The report describes the basis for determining the amount of support:

Because the model used to construct the schedule in this report is an Income Shares Model, the proportion of total parental income that is to [be] used as the basis for a schedule is extremely important. An estimate of how much families with similar incomes spend on their children is required. This information would allow the computation of the

The language of RCW 26.09.090 that the Wilson court sought to harmonize with the child support statute had no possible application in the initial ordering of maintenance in 2011, because the child support ordered could not include an amount for a parent.  See RCW 26.19.020.  That fact remains true today.  Ignoring that fact led the court to erroneously conclude that maintenance must be determined before child support.

Second, the child support statute is an income shares model.  That is, it allocates the support obligation for the children of the parties between the parents in proportion to their net incomes.  That is true in this case.  This issue is not about the adequacy of support, rather it is about the correct allocation of support between the parents.[94]

---

average proportion (percentage) of income spent on children by families in different income classes.  That figure becomes the basis for the child support economic table.

Data on family expenditures is unavailable for the state of Washington alone.  Furthermore, it is prohibitively costly to collect a reliable data set for the state.  The federal government, however, has updated and revised the 1972-73 Consumer Expenditures Survey (CES) to 1986.  This revision has included adjustments for cost of living changes, real income changes and demographic change.  It is regarded as the most reliable survey of its type now available and has been used by both the federal government and other states as the basis for child support schedules.

Id. at 12.

[94] The combined net income of the parents exceeded the economic table's top amount: Mother $2,401; Father $24,070.  Yet, Ms. Condie did not request the trial court to exercise the discretion authorized in RCW 26.19.020 to set support in an amount above that in the economic table.

The <u>Wilson</u> court acknowledged the sections of the child support statute it cited required that court-ordered maintenance is income to the receiving spouse and a deduction from income for the paying spouse. <u>Wilson</u>, 165 Wn. App. at 341. But, it observed that the language referenced maintenance "'to the extent actually paid'" and "'actually received.'" <u>Id.</u> at 341-42. The court then concluded that the statute was silent on whether the court must consider maintenance which was ordered contemporaneously with child support, but had not yet been paid. <u>Id.</u> at 342. This too was error.

The child support schedule is to be applied in "<u>all</u> proceedings in which child support is determined or modified." RCW 26.19.035(1)(c). The legislature clearly stated its intent in enacting the child support schedule:

> The legislature intends, in establishing a child support schedule, to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living. <u>The legislature also intends that the child support obligation should be equitably apportioned between the parents</u>.
>
> The legislature finds that these goals will be best achieved by the adoption and use of a statewide child support schedule. Use of a statewide schedule will benefit children and their parents by:
>
> (1) Increasing the adequacy of child support orders through the use of economic data as the basis for establishing the child support schedule;
>
> (2) <u>Increasing the equity of child support orders by providing for comparable orders in cases with similar circumstances</u>; and

(3) Reducing the adversarial nature of the proceedings by increasing voluntary settlements as a result of the greater predictability achieved by a uniform statewide child support schedule.

RCW 26.19.001.

The stated statutory intent is to apportion child support between parents based on their income. The maintenance adjustment to income was not in the original child support schedule proposed by the Washington Child Support Commission.[95] The change was made in 1991. LAWS OF 1991, 1st Spec. Sess., ch. 28, § 5; RCW 26.19.071. The change treated maintenance for child support purposes in the same manner it was treated for federal income tax purposes.[96] The maintenance adjustment was limited in two ways that were

---

[95] Washington State Child Support Commission Report to the Legislature, November 1987, at 15.

[96] Alimony is deductible by the payer, and the recipient must include it in income. Although this discussion generally is written for the payer of the alimony, the recipient also can use the information to determine whether an amount received is alimony.

The following rules for alimony apply to payments under divorce or separation instruments executed after 1984:

A payment to or for a spouse under a divorce or separation instrument is alimony if the spouses don't file a joint return with each other and all the following requirements are met.

- The payment is in cash.
- The instrument doesn't designate the payment as not alimony.
- The spouses aren't members of the same household at the time the payments are made. This requirement applies only if the spouses are legally separated under a decree of divorce or separate maintenance.

subjected to documentation.  First, it had to be court-ordered.[97]  Second, it was

available only to the extent the order was followed and the maintenance paid.

RCW 26.19.071(5)(f), (3)(q).  A maintenance obligation, if any, is determined at

the time of dissolution.  RCW 26.09.090.  It is later modifiable upon a

substantial change of circumstances.  RCW 26.09.170.  Failure to include the

maintenance transfers in the income calculation for determining child support is

contrary to the equitable apportionment and uniformity purposes expressly

stated in the statute.

There is a significant difference between failure to pay maintenance as

ordered, and not having a history of maintenance payments because the order

has not yet gone into effect.  The Wilson court failed to recognize this

distinction. Because of that failure, it imputed to the legislature a silence as to

whether maintenance was an income adjustment in setting the initial orders.

Properly read, the statute is not silent as to whether the maintenance

---

- There is no liability to make any payment (in cash or property) after the death of the recipient spouse.
- The payment isn't treated as child support.

U.S. Internal Revenue Serv., Pub. 504, Divorced or Separated Individuals (2019), (after table 4) https://www.irs.gov/publications/p504#en_US_2019_publink1000175987 [https://perma.cc/8MZ5-HW68].

"Amounts paid as alimony or separate maintenance payments under a divorce or separation instrument executed after 2018 won't be deductible by the payer." Id. ("Reminders" section).

[97] The court obviously knows of the maintenance obligation it is imposing, but some cases involve a claim of a maintenance obligations from a prior marriage and will require proof of such an order.

adjustment must be made when the initial maintenance and child support orders are entered.  Properly read the maintenance adjustment must be applied, absent evidence that the obligor has failed to pay according to the court order under which they claim the right to the deduction from their income.  Necessarily, maintenance must be determined before child support.

When the legislature enacts a statute, it does so with the expectation that it will be obeyed.  When the trial court enters a decree, property division, maintenance order, and order of child support, the court has an expectation that the orders will be followed.

Neither the trial court nor the Court of Appeals expressed fear that Mr. Wilson would not obey the property and debt divisions in the decree or would not pay child support.  Wilson, 165 Wn. App. 341-42.  Yet, while both maintenance and child support are enforceable under chapter 26.18 RCW, Child Support Enforcement, and chapter 26.21A RCW, Uniform Interstate Family Support Act, both courts presumed Mr. Wilson would not pay his ordered maintenance.  Wilson, 165 Wn. App. at 342.  The orders in effect required him to prove compliance with the maintenance order prior to receiving the maintenance adjustment in the child support order.  If that was the trial court's expectation, then when Mr. Wilson made one or more payments it certainly would represent a substantial change in circumstances not anticipated at the time of the child support order.  This substantial change in circumstances

would allow Mr. Wilson to begin a child support modification, and hope the trial court would apply the maintenance adjustment in recomputing child support. But, child support cannot be modified retroactively, so Mr. Wilson could not recoup the statutory benefits he lost under the initial order. RCW 26.09.170(1)(a). The Wilson interpretation of the statute creates an absurd result, nonuniformity and unnecessary re-litigation of the issue. We will not interpret a statute in an absurd manner. Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002) (The court must avoid constructions that yield unlikely, absurd, or strained consequences.).

This issue presents infrequently. If the maintenance is awarded for less than three years, it is highly unlikely this issue would be heard before the Supreme Court before it was moot. And, if this is the sole issue in a case, the recoverable economic interests at stake diminish over time and would seldom merit the expense of an appeal to the Supreme Court. But, the fact that review of the issue and of the Wilson opinion is illusive does not diminish the importance of correct application of the statute in the first place. It makes it more important to be correct initially.

Ms. Condie suggests that we apply rules of construction such that the failure of the legislature to amend the statute in light of the Wilson opinion suggests legislative agreement.[98] First, there was no error or ambiguity in the

---

[98] See, e.g., Health Pros Nw., Inc. v. Dep't of Corr., 10 Wn. App. 2d 605, 616, 449 P.3d 303 (2019) (court presumes legislature aware of judicial

statute that needed to be changed. The problems identified in <u>Wilson</u> are confined to the reasoning errors of the opinion. Second, even if the particular rule of construction was applicable, the invocation of that rule requires caution and a sense of proportion. As observed by Justice Finley,

> The essence of the matter is the fact that the rules or maxims of statutory interpretation should be recognized and treated as nothing more than aids or tools which may or may not be pertinent or useful in determining the meaning of statutory language. There is nothing mandatory about the applicability of a rule of statutory interpretation, <u>i.e.</u>, nothing compelling in an ultimate sense in determining the meaning of statutory language. . . . Actually, today it should be clear, without citation of authority and without prolonged explanation, that every statutory maxim or rule of interpretation has its countervailing or opposite maxim or rule.

<u>Schneider v. Forcier</u>, 67 Wn.2d 161, 167-68, 406 P.2d 935 (1965) (Finley, J. dissenting). A few thousand bills are introduced each biennium. Typically, only a few hundred ever become law. The volume of bills and the magnitude of issues before the legislature makes the presumption, that "they" are aware of every judicial pronouncement, a very thin fiction. Legislation advances because of a sense of urgency. Bills require advocates in order to obtain legislative attention and action. The infrequency of the erroneous application of <u>Wilson</u> has not led to an urgent advocacy for change. The presumption of legislative acquiescence is not appropriate on an issue of this relatively limited magnitude.

---

interpretations of statutes and assumes failure to amend indicates legislative acquiescence in court's interpretation) (citing <u>City of Federal Way v. Koenig</u>, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)), <u>review denied</u>, 194 Wn.2d 1025 (2020).

The issue is significant to the parties.  But, typically the costs of appeal to the Supreme Court, let alone the legislature, deter the parties from availing themselves of a remedy.

With this opinion standing in conflict with <u>Wilson</u>, the Supreme Court has an opportunity to correct the error.

<u>Appelwick, J.</u>